STATE of Wisconsin, Plaintiff-Respondent,

v.

William J. CHURCH, Defendant-Appellant.†

Court of Appeals

*No. 01–3100–CR. Submitted on briefs May 13, 2002.—Decided July 25, 2002.*

2002 WI App 212

(Also reported in 650 N.W.2d 873.)

† Petition to review granted 10-21-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James L. Fullin*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. William Church appeals the amended judgment of conviction in which his sentence for second-degree sexual assault was increased on resentencing from thirteen to seventeen years, and from the order denying his motion to reduce the increased sentence to the original term of thirteen years. Church contends the increase in his sentence for second-degree sexual assault violated his right to due

process in sentencing. We conclude the trial court affirmatively stated on the record the grounds for increasing the sentence on the sexual assault conviction, and that the grounds were based on objective, identifiable factual information deriving from events occurring after the original sentencing that warranted an increase in sentence. We therefore conclude that Church's right to due process was not violated by the increase in sentence. Accordingly, we affirm.

## BACKGROUND

¶ 2. Church was convicted of several offenses stemming from an incident in which he drugged and sexually assaulted a seventeen-year-old boy. A jury found Church guilty of five offenses: second-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(d) (1995–96);[1] child sexual exploitation, contrary to Wis. Stat. § 948.05(1)(a); delivering a controlled substance, contrary to Wis. Stat. § 961.41(1)(h)1; and two counts of child enticement, one for enticement with intent to cause a child to expose a sex organ, contrary to Wis. Stat. § 948.07(3), and a second for enticement with intent to give a controlled substance to a child, contrary to § 948.07(6).

¶ 3. Neither during the preparation of the original presentencing investigation (PSI) report nor at the original sentencing did Church acknowledge responsibility for the crimes for which he had been convicted. On May 8, 1997, the trial court sentenced Church to thirteen years in prison for the sexual assault. It withheld sentence on the remaining convictions and ordered probation on each: ten years on the child

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

sexual exploitation offense, six years on the delivery offense, and twenty-four years on each of the enticement offenses. All probation terms were concurrent with each other, but consecutive to the prison term on the sexual assault.

¶ 4. Church appealed the two convictions for child enticement on double jeopardy grounds. In *State v. Church*, 223 Wis. 2d 641, 665, 589 N.W.2d 638 (Ct. App. 1998) (*Church I*),[2] we concluded that the two convictions on the enticement counts were multiplicitous because they were the same in law and in fact. We therefore reversed one of those two convictions and stated:

> We note that the sentences for both counts of child enticement were withheld and that concurrent twenty-four-year terms of probation, consecutive to the prison term for sexual assault, were ordered. Thus, our disposition would not, in itself, affect the duration of Church's prison sentence or of his subsequent term of supervision. Nevertheless, we conclude that we must vacate all sentences imposed for each of Church's four remaining convictions, and remand for re-sentencing on one count each of second-degree sexual assault, child enticement, sexual exploitation of a child, and delivery of THC to a minor. *See State v. Gordon*, 111 Wis. 2d 133, 146, 330 N.W.2d 564, 570 (1983).

*Church*, 223 Wis. 2d at 665–66.

¶ 5. Upon remand, the trial court discussed with counsel the proper scope of the resentencing proceedings and concluded that, under *State v. Carter*, 208 Wis.

---

[2] A petition for review was granted, *State v. Church*, 225 Wis. 2d 487, 594 N.W.2d 382 (Wis. Apr. 27, 1999) (No. 97–3140–CR), but was later dismissed by the supreme court as improvidently granted, 2000 WI 90, ¶ 5, 236 Wis. 2d 755, 613 N.W.2d 848 (Wis. July 11, 2000) (per curiam).

2d 142, 560 N.W.2d 256 (1997), it was required to consider all relevant information, including events occurring subsequent to the original sentencing. The court ordered an updated PSI. That report stated that Church's adjustment in prison was good and that Church had no incidents of misconduct. However, the report stated Church still had not accepted responsibility for his criminal behavior, had made no effort to obtain sex offender treatment, and had not cooperated with the preparation of the updated PSI.[3]

¶ 6. At resentencing, Church addressed the court, acknowledged responsibility for the crimes, stated that he was sorry, and said he wanted to get into treatment. Church's counsel disputed that Church had not requested treatment previously, pointing out that he had requested a transfer to Oshkosh State Correctional Institute (OSCI), and that is the location of the sex offender treatment program (SOTP) that was recommended for Church in his 1997 assessment. Church called as a witness the clinical director of that program. She testified that the program is a four-year program, the most intensive in the system; generally, when inmates are recommended for this program they are placed in it when they are getting closer to their mandatory release date.[4]

---

[3] The updated PSI stated that Church was contacted on November 8, 2000, and asked whether he still denied sexually assaulting the victim, whether he had taken responsibility for his criminal actions, whether he had obtained any treatment since he had been in prison and, if he had not, what was his reason; Church declined to answer or to provide any other information.

[4] The director explained the reason for this is that the inmates then finish the program and make a transition back to the community instead of going back into the prison population,

¶ 7. The prosecutor recommended consecutive terms of imprisonment on all the offenses for a total sentence of thirty-three years: ten years each on the sexual assault, the one remaining enticement, and the sexual exploitation convictions, and three years on the THC delivery conviction. In support of this recommendation, the prosecutor discussed the aggravated nature of the crime, the continued impact on the victim since the original sentence, and Church's denial of his responsibility and failure to seek treatment. Church's counsel argued that all those factors had been taken into account at the original sentencing, including the fact that he was not taking responsibility for his criminal conduct, and now, in fact, he had acknowledged responsibility. Counsel asked the court to leave all the sentences the same, except the sentence on the one enticement conviction that had been reversed on double jeopardy grounds.

¶ 8. The trial court reviewed the transcript from the original sentencing hearing and compared it to the information presented on resentencing. The court referred to the evidence before it that in prison Church had a strong circle of friends centering around his church and a solid employment record, and observed that this was true when he was originally sentenced. As for taking responsibility for his criminal conduct, the court stated that, except for his statement to the court on that day, everything it had said at the original sentencing about Church's failure to take responsibility remained true. The court referred to the letters from church leaders who noted that they were unaware of

"where some of the new found skills and habits would stand a large possibility of getting erased."

the reason Church was convicted;[5] his failure to acknowledge responsibility to the writer of the updated PSI; and his failure to seek treatment in prison. The court then explained its reason for increasing the sentence on the sexual assault conviction:[6]

> I do note that Mr. Church has been an exemplary prisoner in most respects other than treatment needs as he was in the community a fairly exemplary citizen, but for the fact that he sexually assaulted a child. I feel that we are in exactly the same position we were in when Mr. Church sat before me almost four years ago on May 8, 1997. The offense remains just as serious, the character of the defendant has not changed in any way, the protection of the public remains a very serious concern. The only thing that has changed is nearly four years have passed and Mr. Church, as I said about 10 minutes ago, made his first step towards admitting responsibility and seeking help for his very significant problems. I feel that those four years have been wasted and that to impose the same sentence today would in effect give Mr. Church credit for spending the last four years without acknowledging his offense and without doing anything to obtain treatment either for himself or for the public.

[5] The trial court had received numerous letters from prison officials, Church's prison supervisors, and church leaders who attested to Church's exemplary behavior while in prison; however, several did note that they did not know the crime for which Church was sentenced to prison.

[6] The trial court explained that it was not considering the seriousness of the crime or the impact on the victim in resentencing. The seriousness of the offense was taken into account at the time of the original sentencing and nothing had changed in that respect, the court stated. The impact on the victim was also taken into account at the time of the original sentencing, the court said, and it would ignore this factor as not pertaining to Church's behavior since the original sentence.

> [In imposing seventeen years] . . . [m]y intent . . . is to say . . . we are here four years later, four years have passed, we need to start at square one again and hopefully within the time that he is incarcerated, Mr. Church can make the progress I hoped he would make four years ago and has not.

¶ 9. The court imposed the same periods and conditions of probation on the other three convictions as it had earlier, including the same twenty-four-year term of probation on the remaining enticement conviction.

¶ 10. Church filed a motion for modification of the increased sentence on the sexual assault conviction, asking that it be reduced to the original sentence of thirteen years. He argued that his right to due process in sentencing had been violated because no new objective, identifiable factual information had been presented to the court that would support the four-year increase in his sentence. The court denied the motion, explaining:

> [T]he purpose of a prison sentence for a sex offender like Mr. Church is twofold at least. I suppose there is a punishment aspect of it, but more importantly I think are the opportunity for the rehabilitation and the protection of the public. The public is protected obviously so long as he is behind bars. The opportunity for rehabilitation takes place because there [are] programs available in the institution. So, in measuring what was different from sentence one to sentence two, what it's clear I measured from the record is the fact that Mr. Church would remain a danger to the public into the future as I sat there — at least as long as he would have remained a danger [to] the public into the future when I sat there the first time, because nothing had changed other than it was four years later. So whatever sentence protected the public in 1997 would have to be equally

long into the future in 2001 to have the same impact on protection of the public, and that is because Mr. Church had done nothing to reduce the danger to the public through rehabilitation in the interim.

## DISCUSSION

¶ 11. On appeal, Church renews his argument that the record does not reflect any objective, identifiable factual information unknown to the trial court at the time of the original sentencing that warrants an increase in his sentence on the sexual assault conviction, and therefore his right to due process was violated. Before addressing this issue, we explain more fully the reason for vacating the sentence on the sexual assault conviction in *Church I* and consider how that reason bears on the scope of resentencing.

¶ 12. As noted above, in *Church I* we viewed *State v. Gordon*, 111 Wis. 2d 133, 146, 330 N.W.2d 564 (1983), as requiring a remand for sentencing on all offenses, not just the offense involved in the double jeopardy challenge. In *Gordon*, the defendant was found guilty and sentenced to fifteen years on the crime of kidnapping, eight years concurrent for robbery, eight years concurrent with kidnapping for burglary, and fifteen years consecutive to the other three sentences for second-degree murder. The issue before the supreme court was whether the defendant's conviction of and sentence for both second-degree murder and kidnapping, which is the felony underlying the murder conviction, exposed the defendant to double jeopardy. *Gordon*, 111 Wis. 2d at 135. The court concluded that it did, and vacated the conviction and sentence for kidnapping. *Id.* at 146. Then, without discussion, the court stated that the sentences on all the other convictions had to be vacated and remanded for resentencing, citing *State v.*

*Morris*, 108 Wis. 2d 282, 290, 322 N.W.2d 264 (1982); *Robinson v. State*, 102 Wis. 2d 343, 356, 306 N.W.2d 668 (1981); *State v. Upchurch*, 101 Wis. 2d 329, 335–36, 305 N.W.2d 57 (1981); and *Ronzani v. State*, 24 Wis. 2d 512, 520, 129 N.W.2d 143 (1964).

¶ 13. In each of these four cases cited in *Gordon*, the court vacated a sentence because another conviction or another sentence was held invalid on double jeopardy grounds. In three of the four cases there were two convictions, and one was held invalid on double jeopardy grounds; in addition to reversing the invalid conviction, both sentences were vacated and resentencing was ordered. *Morris*, 108 Wis. 2d at 283; *Robinson*, 102 Wis. 2d at 356; and *Ronzani*, 234 Wis. 2d at 519–20. In *Upchurch*, 101 Wis. 2d at 333–34, there was only one conviction, but double jeopardy occurred when the trial court imposed a second sentence based on a repeater statute; both sentences were vacated and remanded for resentencing. In each of these four cases, the reason for vacating all sentences rather than just the one held invalid was to give the trial court the opportunity to resentence with a corrected understanding that there was only one valid conviction (or, in the case of *Upchurch*, that there could be only one sentence): "Accordingly, rather than attempting to infer at the appellate level what sentence the trial court would have imposed had it proceeded on the proper assumption . . . we conclude that the trial court is the proper court to resentence the defendant under a correct application of the law." *Robinson*, 102 Wis. 2d at 356; *see also Morris*, 108 Wis. 2d at 290 n.5 (quoting *Robinson*, 102 Wis. 2d at 356); *Upchurch*, 101 Wis. 2d at 335–36; *Ronzani*, 24 Wis. 2d at 520.

¶ 14. Turning back to *Gordon*, it is clear that, based on the four cases just discussed, the sentence for

second-degree murder had to be vacated because that conviction was the one that rendered the conviction and sentence for kidnapping invalid on double jeopardy grounds. It is less clear why the *Gordon* court viewed the four cited cases as requiring that the sentences of the offenses that were not involved in the double jeopardy challenge be vacated as well. However, we read *Gordon* to require this, and for the same reason: the trial court should have the opportunity to resentence for all offenses with a corrected understanding of what conviction is invalid on double jeopardy grounds, rather than have the appellate court try to infer what the trial court would have done had it imposed a sentence with that understanding.[7]

¶ 15. Although we did not expressly so state in *Church I*, the purpose for vacating all the sentences and

---

[7] The supreme court subsequently explained what it referred to as the "*Ronzani-Gordon*" line of cases in this way:

> The *Ronzani-Gordon* line of cases demonstrates that when a defendant is convicted of and sentenced for two offenses which are later held to be the same offense, and when one conviction and sentence is vacated on double jeopardy principles, the validity of both punishments is implicated, the sentences for both offenses are illegal, and resentencing on the valid conviction is permissible.

*State v. Martin*, 121 Wis. 2d 670, 681, 360 N.W.2d 43 (1985).

However, this explanation apparently overlooks the fact that the court in *Gordon* used this rationale to invalidate not only the sentence on the conviction that was the "same offense" for double jeopardy purposes, but also the sentences on the other, separate offenses, the convictions of which were not involved in the double jeopardy challenge. This analysis in *Martin* does not explain the reason for vacating the sentences on the convictions that are not involved in the double jeopardy challenge—there is nothing invalid or illegal about them.

453

remanding for resentencing was to give the trial court the opportunity to impose the sentences it would have imposed—for sexual assault, sexual exploitation of a child, delivery, and one offense of child enticement— had the trial court known that there was only one valid child enticement conviction. This purpose arguably suggests a limited scope on resentencing. However, we agree with the trial court that the broad language in *Carter* requires that, no matter what the reason for vacating a sentence and remanding for resentence, the trial court should consider all relevant information at resentencing, including information unknown to the court at the time of the original sentencing and information about events and circumstances occurring after the original sentencing. *Carter*, 208 Wis. 2d at 154–58.[8]

---

[8] In *State v. Carter*, 208 Wis. 2d 142, 560 N.W.2d 256 (1997), the defendant in a postconviction motion requested resentencing on the ground that the methodology of a psychological test, the results of which were contained in the presentence report, was flawed. The State agreed to a resentencing, but did not agree that the defendant could introduce evidence of events that had occurred after the initial sentencing. The trial court agreed with the State and therefore excluded evidence on the defendant's participation in treatment programs, positive behavior at the prison, and other events since the original sentencing. The supreme court reversed. It rejected the State's proposal that it distinguish between resentencing when the conviction is invalid and resentencing when only the sentence is invalid, allowing all relevant information to be considered in the former situation, but, in the latter, only information that existed at the time of the original sentencing. The supreme court concluded that it could not

> discern a generally applicable distinction between resentencing following an invalid conviction and resentencing solely to correct an invalid sentence. The nature of the error necessitating the resentencing does not bear on the scope of information that a

Under *Carter*, the role of the trial court is the same at a resentencing as at the original sentencing: the court is to consider at least the primary sentencing factors—gravity and nature of offense, character of defendant, and public safety—in light of all relevant and available information. *Id.* at 156–57. Accordingly, the trial court in this case properly considered events subsequent to the original sentencing.

¶ 16. We now address the issue whether the increase in the sentence on the sexual assault conviction violated Church's right to due process. Although sentencing is within the sound discretion of the trial court, *State v. Tarantino*, 157 Wis. 2d 199, 221, 458 N.W.2d 582 (Ct. App. 1990), whether Church's increased sentence on resentencing violates due process presents a question of law, which we review de novo. *State v. Littrup*, 164 Wis. 2d 120, 126, 473 N.W.2d 164 (Ct. App. 1991).

¶ 17. According to Church, under *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), a presumption of vindictiveness applies to the seventeen-year sentence on resentencing because it was imposed following a successful appeal and is harsher than the initial sentence imposed.[9] Church contends that the presumption is not overcome, because there was no objective, iden-

---

resentencing court should consider. When a resentencing is required for any reason, the initial sentence is a nullity; it ceases to exist.

*Id.* at 154.

[9] In *North Carolina v. Pearce*, 395 U.S. 711 (1969), a case involving a resentencing after retrial, the Court decided that a resentencing court had the power to impose a greater sentence than the one imposed at the initial sentencing, but it imposed certain conditions for doing so, in order to protect the defendant's right to due process.

tifiable factual information unknown to the court at the time of the original sentencing that supports the increased sentence.

██

¶ 18. The State responds that the presumption of vindictiveness does not apply because the resentencing did not follow a retrial. However, the State acknowledges that even if the presumption does not apply, *State v. Leonard*, 39 Wis. 2d 461, 473, 159 N.W.2d 577 (1968), requires that the increased sentence must be based on events that occur or come to the court's attention after the original sentencing. According to the State,

> Due process of law, then requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 725–26 (footnote omitted). Although *Pearce* did not mention a presumption of vindictiveness, later United States Supreme Court decisions have interpreted it as creating one. *See, e.g., United States v. Goodwin*, 457 U.S. 368, 374 (1982) (discussing that *Pearce* applied a "presumption of vindictiveness" that can be overcome only by objective information in the record to justify an increased sentence).

Church's failure to take responsibility for his criminal conduct and failure to pursue treatment meet this standard, and thus there is no violation of Church's right to due process.

¶ 19. We agree with the State's position, which Church does not dispute in his reply brief, that, for purposes of this case, the *Leonard* rule provides due process protection equivalent to that of *Pearce*, although *Leonard* does not refer to a presumption. In *Leonard*, the court held:

> Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.

*Leonard*, 39 Wis. 2d at 473. In the later case, *State v. Martin*, 121 Wis. 2d 670, 686–87, 360 N.W.2d 43 (1985), the court discussed the relation between *Pearce* and *Leonard*. It observed that the *Leonard* rule was broader than the *Pearce* rule because the former applies not only to resentencings after retrial, but to any resentencing. *Martin*, 121 Wis. 2d at 686. However, the court continued,

> the purposes of the *Leonard* and *Pearce* due process rules are the same. First, they ensure that vindictiveness against the defendant will not be a factor in the resentencing process. Second, they relieve the apprehension of vindictiveness which could deter the defendant from exercising the right to challenge a conviction.

*Martin*, 121 Wis. 2d at 686–87.

¶ 20. We therefore do not consider further whether the presumption in *Pearce* applies in this case, and instead turn to the question presented by the first part of the *Leonard* rule: was the increased sentence for the sexual assault conviction based on events that occurred or came to the attention of the court after the first sentencing and that warranted an increased sentence?

¶ 21. The information that satisfies this requirement is "any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding." *State v. Stubbendick*, 110 Wis. 2d 693, 698, 329 N.W.2d 399 (1983) (quoting *Pearce*, 395 U.S. at 751 (White, J., concurring in part)). Church contends that there was no information that met this criteria because: (1) he had denied responsibility for his criminal conduct at the time of the original sentencing, and the court took that into account in the original sentence; (2) there was no evidence that Church would have received sex offender treatment during his first four years in prison even if he had asked for it; and (3) the evidence of his conduct in prison was positive, and that, together with his admission of responsibility and expression of remorse at resentencing do not warrant an increased sentence. We examine each of these contentions in turn.

¶ 22. It is true that at Church's original sentencing, Church's failure to take responsibility for his criminal conduct was a significant factor in the court's sentencing decision. After observing that Church had no prior criminal record, a strong family background, and a circle of friends centered around his church, the court stated:

Mr. Church chose to testify at his trial in a manner that the jury chose not to believe. His testimony placed the blame for what occurred in that motel room on the victim, and I think that is a character issue . . . .

Mr. Church has no — he failed to take responsibility when charged with these criminal offenses. He failed to take responsibility when the probation officer attempted to interview him for purposes of the presentence investigation. And he fails to take responsibility here today.

. . . .

Mr. Church is not an appropriate candidate for probation, No. 1, because he doesn't admit what he did, and without admitting that, he is not a good candidate for treatment denial group or no denial group . . . .

I think that a prison term with a consecutive probationary term would best serve the dual purposes of protection of the community and hopefully the rehabilitation of Mr. Church.

¶ 23. However, we do not agree with Church that, because the court took Church's denial of responsibility into account when it originally sentenced him, his continued failure to accept responsibility over the next four years is not new information to the sentencing court. Church points to the trial court's words at resentencing that "[t]he only thing that has changed is nearly four years have passed." But, read in context, this does not mean there is no new information; it means that the new information is that Church continued to deny responsibility during four years of imprisonment. This new information is relevant to Church's character and to the prospects for his rehabilitation, and, thus, to the protection of the public: it may reasonably imply that Church was entrenched in his

459

denial of responsibility and that his rehabilitation will be more difficult than the trial court anticipated at the time of sentencing. Therefore, it is new information that may warrant an increase in sentence, within the trial court's proper exercise of its sentencing discretion.

¶ 24. With respect to the availability of treatment during Church's first four years in prison, we do not understand the trial court to have determined that Church could have been admitted into the SOTP at OSCI had he requested that. Rather, we understand the court to have determined that Church made no effort within the first four years of incarceration to obtain any type of treatment. We conclude there is evidence in the record to support this determination.

¶ 25. The updated PSI stated that on May 29, 1997, a sex offender assessment report on Church recommended that he complete the Denial Focus Sex Offender Program and SOTP. A Classification Specialist Report dated May 30, 1997, indicated that Church denied the need for either program; a report issued a short time later stated he was not amenable to treatment. Church was initially incarcerated at Dodge Correctional Institution (DCI) in Waupun, Wisconsin, and was transferred to a facility in Texas in October 1997.

¶ 26. Church's Program Review Classification (PRC) Report of July 1998 stated that Church requested placement at OSCI when he returned to Wisconsin, and that was the recommendation initially made. However, a note added August 3, 1998, states the Church asked to remain at the Texas facility for another eleven to thirteen months, and he was allowed to do so. Church's PRC of August 1999 states that Church requested an extended stay at the Texas facility, and again, he was allowed to remain. Both PRCs noted that Church's custody classification was medium and that he

was in need of the denier's program and the OSCI-SOTP. Neither program existed at the Texas facility.

¶ 27. The updated PSI reported that Church appeared before the Parole Commission in October 1999. The commission determined that he had not served a sufficient time for punishment and release would involve an unreasonable risk to the community. The commission observed that the denier's program and SOTP were recommended; that successful participation was essential, and that Church "questioned whether [he] need[ed] the intensive program."

¶ 28. Church's PRC of February 2000 noted that "upon return, [from Texas] inmate wants medium custody (OSCI)." Again, this PRC noted Church's need for the denier's program and OSCI-SOTP. The recommendation was that Church have medium custody and be transferred to "OSCI for proram [sic] availability." Church was transferred to DCI on May 26, 2000, and remained there up to the date of resentencing on January 5, 2001. He made no request at his PRC of August 2000, other than to remain in Wisconsin, and the recommendation was that he remain in medium custody at DCI. This PRC report again noted his need for the denier's program and SOTP, and stated they were not available at that institution. The updated PSI reported that on November 8, 2000, the social worker at DCI confirmed that Church had not attended or requested any sex offender treatment program.

¶ 29. The OSCI-SOTP director testified that generally before being accepted into that program, a person must successfully complete a denier's program. However, OSCI-SOTP will consider accepting someone who has not completed a denier's program if the person satisfies the staff that he is no longer in denial. Completion of the denier's program in itself does not mean that

a person is ready for SOTP; an assessment is done at the end of the denier's program to see if the person is ready for SOTP. There is a denier's program at OSCI and also one at Racine Correctional Institution.

¶ 30. Based on this evidence, it was not clearly erroneous for the court to find that Church had not requested any treatment and had chosen to remain at facilities where treatment was not available. Church argues that, even if he had requested treatment in OSCI-SOTP, the director's testimony shows his request would not have been granted until a certain time before his mandatory release date. That may be true, but the record also shows that Church had done nothing as of November 15, 2000, the date of the updated PSI, to make it likely that he would be accepted into that four-year program even though his mandatory release date—March 19, 2005—was only four years and four months away. He had not sought admission to a denier's program, the successful completion of which is generally a prerequisite for SOTP.

¶ 31. Church's third point is that the positive new information about his conduct in prison, his involvement with a faith community in prison, and his expression of remorse, responsibility, and willingness to seek treatment at the resentencing do not warrant an increase in sentence. However, we conclude that, in spite of this positive new information—all of which the court acknowledged—Church's denial of responsibility and failure to take steps to seek the recommended treatment during the four years of incarceration could properly be a basis for an increase in his sentence.

¶ 32. The court could reasonably decide that his positive conduct in other areas did not overcome the need for sex offender treatment in order to protect the

public—just as the court had decided at the original sentencing. The court could also reasonably decide that a longer period of incarceration was necessary to address that need because his failure to take responsibility and seek the recommended treatment during the four years both showed a greater resistance to treatment than the court had envisioned at the original sentencing and meant that there was insufficient time remaining for the successful completion of the recommended treatment. It is true the director of OSCI-SOTP testified that it would be possible for an inmate to complete the SOTP program between the date of resentencing and Church's mandatory release date, and that acceptance into that program without successful completion of the denier's program was possible. However, she made it clear that she was not talking specifically about Church. The court could reasonably determine that, because of Church's failure to seek admission to a denier's program, there was no assurance that he would be able to be transferred to OSCI, gain admission to the SOTP program, and successfully complete it before his mandatory release date.

¶ 33. We agree with the State that *Stubbendick*, 110 Wis. 2d at 702–03, provides support for this conclusion. In *Stubbendick*, the defendant obtained a trial after his guilty plea to second-degree sexual assault was withdrawn, and the defendant was found guilty. At sentencing, the court considered these factors to justify a greater sentence than had been imposed after the guilty plea: (1) the leniency of the first sentencing court was based on the plea agreement; (2) the defendant was not a good candidate for rehabilitation; and (3) the court had amplified knowledge of the crime from the trial. *Id.* at 700. In explanation of the second factor, the trial court stated there was a reduced chance of

rehabilitation compared to what was known at the first sentencing, because the defendant had been involved in a counseling program in prison, but had dropped out because "he disagreed with its philosophy," and the fact that the defendant second-guessed the experts providing treatment rather than cooperate had a definite bearing on his ability to be rehabilitated. *Id.* at 702–703. On appeal, the supreme court concluded that the increase in sentence based on these factors satisfied the *Leonard* standard, discussing each factor in turn. *Stubbendick*, 110 Wis. 2d at 701–04.

¶ 34. We recognize, as Church points out, that there was more new negative information in *Stubbendick*, and that Church did not drop out of a treatment program. But the important point for our purposes is the general proposition that lack of progress in, or effort toward, completing recommended treatment programs may constitute "objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding," *id.* at 698, that warrants an increase in sentence under *Leonard*. Thus, we do not agree with Church's suggestion that the trial court in this case based the increased sentence on subjective factors that do not meet the *Leonard* test. Church relies here on *United States v. Resendez-Mendez*, 251 F.3d 514, 519 (5th Cir. 2001), in which the court concluded that the resentencing court's disbelief in the sincerity of the defendant's expression of remorse was a "subjective" evaluation that did not constitute specific, objective reasons grounded in newly-discovered evidence or events occurring after the original sentencing. The trial court here did not disbelieve Church's expression of remorse, but acknowledged it as a positive

first step; the increased sentence was based upon specific and objective behavior of Church since the original sentencing.

¶ 35. We conclude the trial court affirmatively stated on the record the grounds for increasing the sentence on the sexual assault conviction, and that the grounds were based on objective, identifiable factual information deriving from events occurring after the original sentencing that warranted an increase in sentence. We therefore conclude that Church's right to due process was not violated by the increase in sentence.

¶ 36. We recognize that the result of Church's successful challenge to one of his two child enticement convictions on double jeopardy grounds is an increase in the term of imprisonment for a conviction that was not involved in that double jeopardy challenge. Church argues that this result will deter defendants from exercising their right to challenge convictions out of fear of increased sentences. However, it is deterrence based on fear of increased sentences due to vindictiveness that the Due Process Clause aims to guard against. The *Leonard* test, which has been met here, provides protection against vindictiveness in resentencing.

¶ 37. We recognize, too, that there are valid arguments against vacating and reversing all sentences in a case such as this, thereby allowing for a resentencing that is not limited in scope to carrying out the trial court's original intent in sentencing with a corrected understanding of the law. However, we are bound by *Gordon* and *Carter*. These arguments must therefore be addressed to the supreme court.[10]

---

[10] Church does not argue that vacating the valid sentences for sexual assault, child sexual exploitation, and delivering a

*By the Court.*—Judgment and order affirmed.

controlled substance, which were separate from the two entice-ment counts, violated double jeopardy limitations on increasing a sentence after its imposition; accordingly, we do not address this issue. *See State v. Willett,* 2000 WI App 212, ¶ 6, 238 Wis. 2d 621, 618 N.W.2d 881, *review denied,* 2000 WI 121, 239 Wis. 2d 311, 619 N.W.2d 94 (Wis. Oct. 17, 2000) (No. 99–2671–CR); *State v. Burt,* 2000 WI App 126, ¶¶ 11–12, 237 Wis. 2d 610, 614 N.W.2d 42, *review denied,* 2000 WI 121, 239 Wis. 2d 309, 619 N.W.2d 92 (Wis. Sept. 12, 2000) (No. 99–1209–CR) (both recog-nizing the principle that the application of the Double Jeopardy Clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sen-tence).