STATE of Wisconsin, Plaintiff-Respondent,

v.

Victor NAYDIHOR, Defendant-Appellant.†

Court of Appeals

*Nos. 01–3093–CR, 01–3094–CR. Submitted on briefs
September 12, 2002.—Decided October 30, 2002.*

2002 WI App 272

(Also reported in 654 N.W.2d 479.)

† Petition to review filed.

■■■■■■■■■■■

■■■■

■■■■■■■■■■■

■■ ■■■■■

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Philip J. Brehm* of Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Victor Naydihor appeals from judgments of conviction for causing great bodily harm by the intoxicated use of a motor vehicle and felony bail jumping contrary to WIS. STAT. §§ 940.25(1)(a) and 946.49(1)(b) (1999–2000)[1] and from an order denying his motion for postconviction relief. Naydihor's appeal stems from his resentencing, which was necessitated by improper remarks by the prosecutor in violation of the plea agreement at the original sentencing. The resentencing produced an increased sentence. On appeal, Naydihor argues that his trial counsel was ineffective at the resentencing for failing to object to certain remarks by the prosecutor which Naydihor contends once again breached the plea agreement. Naydihor also contends that the increased sentence was the product of judicial vindictiveness in violation of his due process rights.

¶ 2. We hold that the prosecutor did not violate the terms of the plea agreement at the resentencing hearing. Therefore, the resentencing court did not err

---

[1] All statutory references are to the 1999–2000 version unless otherwise indicated.

in denying Naydihor's request for a *Machner*[2] hearing. We further hold that the State properly presented updated information about the victim's current physical and financial condition and that the resentencing court was entitled to consider such information on the resentencing decision. Therefore, the increased sentence was not the product of judicial vindictiveness. We therefore affirm the judgments and order.

## *BACKGROUND*

¶ 3. On February 25, 2000, Naydihor was involved in an accident with another vehicle causing injuries to its two occupants. The investigation determined that Naydihor was at fault and that he was intoxicated at the time of the accident. As a result, the State filed a criminal complaint against Naydihor alleging three counts: (1) causing great bodily harm by intoxicated use of a motor vehicle contrary to Wis. Stat. § 940.25(1)(a); (2) operating while intoxicated causing injury contrary to Wis. Stat. §§ 346.63(2)(a) and 346.65(3m); and (3) operating with a prohibited alcohol concentration (PAC) contrary to Wis. Stat. §§ 346.63(1)(b), 346.65(3m) and 340.01(46m).

¶ 4. On March 15, 2000, Naydihor waived his right to a preliminary hearing and entered into a plea agreement with the State. Under the agreement, Naydihor would plead guilty to causing great bodily harm by the intoxicated use charge, and the State would dismiss the remaining charges.[3] The State further

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] The plea agreement also disposed of various forfeiture citations related to the accident that are not relevant to this appeal.

agreed to recommend a period of probation, but retained the right to recommend any conditions of probation.

¶ 5. On April 7, 2000, Naydihor appeared before Judge Barbara A. Kluka and entered a guilty plea to causing great bodily harm by the intoxicated use of a motor vehicle. In keeping with the plea agreement, the State dismissed the remaining charges and indicated that it would recommend probation, but retained a "free hand" on the conditions of that probation. After accepting Naydihor's plea, Judge Kluka scheduled sentencing for May 18, 2000, and ordered a presentence investigation. At the scheduled sentencing hearing, the State notified Judge Kluka that Naydihor had not cooperated in completing the presentence investigation and had not complied with the conditions of bond. Judge Kluka then granted the State's request to revoke Naydihor's bond, and the sentencing hearing was adjourned.

¶ 6. On May 22, 2000, the State charged Naydihor with felony bail jumping. Naydihor entered a no contest plea to that offense before Judge Kluka on July 6, 2000, and the matter proceeded to sentencing on both offenses—causing great bodily harm by the intoxicated use of a motor vehicle and bail jumping. Consistent with the plea agreement on the great bodily harm charge, the State argued for probation with one year of confinement in the county jail as a condition of probation.[4] However, the prosecutor further stated that the State had entered into the plea agreement before learning the extent of Naydihor's prior record. Naydihor's counsel argued for probation with or without jail on the driving offense and a fine on the bail jumping offense.

_____
[4] The State also asked for a $2000 fine on the bail jumping conviction.

Judge Kluka also heard from Naydihor and reviewed a written impact statement from the victim.

¶ 7. In fashioning the sentence, Judge Kluka noted the victim's injuries, her medical expenses, her confinement to a wheelchair, and her inability to work for six months or to provide the necessary aid to her blind spouse. Judge Kluka ultimately rejected the plea agreement recommendation and sentenced Naydihor to three years' initial confinement followed by five years of extended supervision on the great bodily harm offense and ten years of consecutive probation on the bail jumping offense.

¶ 8. On December 4, 2000, Naydihor filed a post-conviction motion requesting resentencing. In his motion, Naydihor contended that the State had breached the plea agreement based on the prosecutor's statement that the State had entered into the plea agreement before learning the extent of Naydihor's prior record. At the hearing on the motion, the State did not contest Naydihor's argument, and Judge Kluka granted Naydihor's motion. Judge Kluka further directed that the matter be assigned to a different judge.

¶ 9. The matter was then assigned to Judge Bruce E. Schroeder who conducted the resentencing on March 5, 2001.[5] The victim of Naydihor's offense appeared at the hearing and described the changes in her financial and physical condition since the time of her victim impact statement. The victim stated that she continued to be unable to walk or work. She indicated that she is "confined to a wheelchair" and "probably will be in it forever." She noted that her medical expenses had

---

[5] Naydihor moved for substitution of Judge Schroeder pursuant to Wis. Stat. § 971.20. That request was denied and Naydihor does not challenge that ruling on appeal.

increased to approximately $70,000 and that the money from her uninsured motorist coverage had not covered her expenses.

¶ 10. As to the great bodily harm offense, both the State and Naydihor's counsel reiterated the positions they had taken in the original sentencing proceeding before Judge Kluka.[6] Without objection from Naydihor's counsel, the prosecutor twice referred to Naydihor as a danger to the community and also addressed the worsened physical and financial condition of the victim. Like Judge Kluka, Judge Schroeder declined to follow either party's recommendation. Instead, Judge Schroeder sentenced Naydihor to five years of initial confinement followed by five years of extended supervision on the great bodily harm offense and ten years of consecutive probation on the bail jumping offense.

¶ 11. On September 14, 2001, Naydihor filed a postconviction motion requesting a second resentencing or, in the alternative, the vacation of Judge Schroeder's sentence and the reimposition of Judge Kluka's sentence. Naydihor argued that the prosecutor's comments at resentencing had once again breached the plea agreement and that his counsel was ineffective for failing to object to the comments.

¶ 12. Judge Schroeder denied Naydihor's motion following a hearing on October 22, 2001. The judge determined that the prosecutor had not breached the plea agreement and that there were new factors presented at resentencing regarding the victim's physical and financial condition that warranted an increased

---

[6] As to the bail jumping offense, neither party stated a position.

sentence. A written order denying Naydihor's motion for postconviction relief was entered on November 13, 2001. Naydihor appeals.

## DISCUSSION

### Breach of Plea Agreement

¶ 13. Naydihor first contends that the prosecutor breached the terms of the plea agreement during the resentencing hearing before Judge Schroeder and, therefore, he was entitled to a *Machner* hearing to determine whether his counsel was ineffective for failing to object to the prosecutor's remarks. Judge Schroeder denied the motion without a hearing, ruling that the State had not breached the plea agreement.

¶ 14. In reviewing a breach of plea agreement case, this court will uphold the circuit court's determination of historical facts—the terms of the plea agreement and the State's conduct in question—unless they are clearly erroneous. *State v. Williams*, 2002 WI 1, ¶ 20, 249 Wis. 2d 492, 637 N.W.2d 733. However, whether the State's conduct constitutes a substantial and material breach of the plea agreement presents a question of law. *Id.*

¶ 15. The plea agreement in this case provided that the State would "recommend probation . . . but retain[ ] a free hand on the conditions of that probation." Naydihor contends that the prosecutor violated the plea agreement at resentencing by twice informing the court that Naydihor was a danger to the community. Naydihor additionally argues the prosecutor improperly emphasized the impact on the victim by stress-

ing the victim's worsened financial and physical condition since the initial sentencing. Naydihor points to the following statements by the prosecutor:

> There is no excuse whatsoever for what happened on February 25th last year. There is no excuse for an otherwise productive citizen of this community to now be confined to a wheelchair, to have bills racking up because of her inability to work and to have her young grandchild in fear when they did nothing wrong and the defendant did everything wrong . . . .
>
> And, unfortunately, all the restitution in the world is not going to give [the victim] the ability to walk that she had before February 25, 2000.

¶ 16.   Whether trial counsel was ineffective for failing to object to the prosecutor's remarks turns on whether the remarks violated the plea agreement. A prosecutor's statements constitute an actionable breach when the breach is material and substantial. *See id.* at ¶ 38. A material and substantial breach is one that defeats the benefit for which the accused bargained. *Id.* While a prosecutor need not enthusiastically recommend a plea agreement, he or she may not perform an "end run" around a plea agreement by covertly conveying to the trial court that a more severe sentence is warranted than that recommended. *Id.* at ¶ 42.

¶ 17.   Here, the prosecutor agreed to recommend probation, but retained a "free hand" as to the conditions of probation, a caveat that is critical to the resolution of the issue. The prosecutor argued for maximum jail time without work release followed by a lengthy period of probation. In support of that request, the prosecutor could reasonably and fairly argue that Naydihor's driving conduct, which had caused serious and disabling injuries to the victim, represented a

danger to the community. These statements dovetailed with the prosecutor's further discussion of Naydihor's "polysubstance abuse" and failure to pass substance tests when he was out on bond. As a result, the prosecutor requested that the conditions of probation also require Naydihor to obtain chemical dependency assessments, complete treatment programs, and submit to weekly random urine tests.

¶ 18.   Naydihor relies on the supreme court's decision in *Williams* in support of his contention that the prosecutor's remarks at his resentencing constituted a material and substantial breach of his plea agreement. However, Naydihor's reliance is misplaced. Both the plea agreement and the prosecutor's comments in this case are readily distinguished from the agreement and comments in *Williams*.

¶ 19.   In *Williams*, the State promised to recommend a sentence of three years' probation with sixty days in the county jail. *Id*. at ¶ 24. However, at sentencing the State provided a less than neutral recitation of the plea agreement and implied that had it known more about the defendant, it would not have entered into the plea agreement. *Id*. at ¶ 47. In addition, the prosecutor declared her personal negative opinion of the defendant, creating the impression that the State was backing away from the plea agreement. *Id*. at ¶ 48. The prosecutor in this case made no such indications.

¶ 20.   Further, unlike the prosecutor in *Williams*, the prosecutor in this case did not reference the lengthier sentence recommendation in the presentence investigation report, much less imply that he agreed with it. Further, the prosecutor did not discuss imprisonment or incarceration during his statements to the

court. Rather, consistent with the recommendation, the prosecutor stressed that Naydihor needed to be supervised and "monitored."

¶ 21. We conclude that the prosecutor's recitation of the State's recommendation was fairly and properly targeted at the State's request for maximum confinement as a condition of probation. Therefore, the statements were not a breach of the plea agreement, much less a material and substantial breach of the agreement. Although Judge Schroeder chose not to follow the State's recommendation, Naydihor nevertheless received the benefit of the agreement for which he bargained.

*Vindictiveness of the Increased Sentence*

¶ 22. Judge Kluka had originally sentenced Naydihor to a three-year term of initial confinement, followed by five years of extended supervision. At resentencing, Judge Schroeder increased Naydihor's initial term of confinement by two years for a total of five years of initial confinement, followed by five years of extended supervision. Naydihor argues that this increased sentence was vindictive and in violation of his constitutional right to due process.

¶ 23. While sentencing lies within the sound discretion of the trial court, whether an increased sentence on resentencing violates due process presents a question of law which we review de novo. *State v. Church*, 2002 WI App 212, ¶ 16, 257 Wis. 2d 442, 650 N.W.2d 873.

¶ 24. Naydihor relies on *North Carolina v. Pearce*, 395 U.S. 711 (1969), in support of his contention that the increased sentence imposed by Judge Schroeder

violates his constitutional rights. In *Pearce*, the Supreme Court recognized the power of a resentencing court to impose a greater sentence than the one imposed initially. *Id.* at 723; *see also State v. Helm*, 2002 WI App 154, 256 Wis. 2d 285, 647 N.W.2d 405. However, the *Pearce* Court stressed that vindictiveness on the part of the sentencing court may not play a part in the resentencing after a new trial, and the defendant must not be placed in fear of such retaliatory motivations on the part of the sentencing judge. *Pearce*, 395 U.S. at 725. To protect a defendant against potential vindictiveness, the *Pearce* Court held that an increase in the sentence must be supported by reasons set forth on the record and must be "based upon objective information *concerning identifiable conduct on the part of the defendant* occurring after the time of the original sentencing proceeding." *Id.* at 726 (emphasis added).

¶ 25. Naydihor relies on *Pearce* in arguing that his increased sentence is impermissible because it is based not on his conduct, but on information relating to the impact of his crime on the victim. We reject Naydihor's contention that *Pearce* limited the trial court's ability at resentencing to consider factors other than his conduct.

¶ 26. *Pearce* involved a resentencing following a retrial. This court recently addressed the application of *Pearce* to a resentencing that did not occur after a retrial. *Church*, 2002 WI App 212 at ¶¶ 17–20. We determined that in such a case, we apply the broader rule set forth in *State v. Leonard*, 39 Wis. 2d 461, 473, 159 N.W.2d 577 (1968), a case decided one year prior to *Pearce*, which applies not only to resentencings after retrial but to any resentencing. *Church*, 2002 WI App 212 at ¶ 19.

¶ 27.   The *Leonard* rule provides:

> [O]n resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.

*Leonard*, 39 Wis. 2d at 473. We observe that there is no indication in *Leonard* that a trial court's consideration is limited to the defendant's conduct. Rather, we read *Leonard* to permit a resentencing court to consider *any* relevant information that developed, or events that have occurred, after the original sentence.

¶ 28.   Our reading of *Leonard* is consistent with the *Church* court's discussion of the broad language in *State v. Carter*, 208 Wis. 2d 142, 560 N.W.2d 256 (1997). In *Church*, we concluded that *Carter* requires:

> [T]he trial court should consider all relevant information at resentencing, including all information unknown to the court at the time of the original sentencing and information about events and circumstances occurring after the original sentencing . . . . [T]he role of the trial court is the same at a resentencing as at the original sentencing: the court is to consider at least the primary sentencing factors—gravity and nature of the offense, character of the defendant, and public safety—in light of all relevant and available information.

*Church*, 2002 WI App 212 at ¶ 15. Thus *Carter*, like *Leonard*, envisions the trial court considering much more than the defendant's conduct at resentencing.

759

¶ 29.    Here, Judge Schroeder affirmatively stated that the increased sentence was based upon the new and more current information pertaining to the impact of Naydihor's offense on the financial and physical condition of the victim. Based on *Leonard* and *Carter*, we conclude that Wisconsin law favors the consideration of all relevant information at resentencing. This is so whether the information pertains to the defendant or the victim. Thus, the current information pertaining to the victim in this case was relevant to the resentencing decision and was properly considered by Judge Schroeder. Although the new and additional information operated to the detriment of Naydihor, such information might well benefit a defendant in another case.

██

¶ 30.    This brings us to Naydihor's final argument. Naydihor contends that even if a sentencing court may consider factors other than the defendant's conduct, the factors considered here concerning the victim's condition were not "*new or newly known*" at the time of resentencing.

¶ 31.    In *Denny v. State*, 47 Wis. 2d 541, 178 N.W.2d 38 (1970), the court instructed that in resentencing a defendant, "[a] trial judge is not free to re-evaluate the first sentence; he [or she] is in effect bound by the maximum of the previous sentence unless new factors or newly known factors justify a more severe sentence." *Id.* at 544. Here, Judge Schroeder sentenced Naydihor to two additional years of initial confinement. Consistent with *Denny*, Judge Schroeder determined that the current facts relating to the victim's condition, not known at the time of the original sentencing, warranted an increased sentence. In justifying his departure from Judge Kluka's original sentence, Judge Schroeder stated the following reasons:

[Y]ou have ruined this lady's life. And this case, by the way, is significantly different than what it was when it was before Judge Kluka because Judge Kluka was working off this presentence, which stated that [the victim] suffered extensive injuries to her leg as a result of this accident, etc. [The victim] indicated that as a result of the injuries suffered to her left leg, she may have some permanent disability. Well, now we know that she will. And, in fact, she says she'll never walk again. That's a monstrous increase in the enormity of this crime from how it appeared before Judge Kluka. When Judge Kluka heard this case, it says [the victim] believes her medical expenses total at least $30,000.00. Now she says it's $75,000.00. And she hasn't seen anywhere near the end of it yet.

¶ 32. Naydihor contends that the facts cited by Judge Schroeder are legally insufficient to justify the increased sentence because Judge Kluka was already aware of the severity of the victim's injuries and of her continuing medical expenses. In support, Naydihor points to the following facts known to Judge Kluka: (1) the victim had incurred somewhere between $20,000 and $30,000 in medical expenses and that those expenses were "ongoing"; and (2) the victim would need additional surgery and therapy to treat her injuries and that she had suffered severe financial hardship. In addition, at the original sentencing, the victim's impact statement dated April 11, 2000, indicated that she would be in a wheelchair for six months and would be unable to walk or work during that period. Likewise, the presentence report indicated that she may have some "permanent disability," the extent of which would be officially determined when her cast was removed.

¶ 33.   However, by the time of the resentencing on March 5, 2001, the information regarding the victim's physical and financial condition had changed. Despite predictions that she would be in a wheelchair for six months, the victim indicated at the resentencing that she was still confined to a wheelchair and would probably be forever. She continued to be unable to work or walk. She was facing a fourth surgery, her medical bills had been approximately $70,000 and the money she received from her uninsured motorist coverage had been exhausted.

¶ 34.   Naydihor argues that whatever additional information Judge Schroeder learned from the victim, the constant fact remained that the victim's injuries were extensive and the financial impact was substantial. Since this was established before Judge Kluka, Naydihor reasons, there is no justification for an increased sentence. We disagree. The victim's need for a wheelchair extended at least six months past predictions at the time of the original sentencing. While the hardships of those six months—the inability to walk, work or care for her blind husband—remained constant, by the time of the resentencing, the length of the victim's need for a wheelchair was almost twice that considered at the original sentencing. Moreover, the financial impact was almost twice that considered at the original sentencing and was accompanied by information that the victim was now personally responsible for her medical bills because her uninsured motorist coverage had been exhausted.

¶ 35.   We conclude that Judge Schroeder's departure from Judge Kluka's original sentence was justified by new information concerning the impact of Naydihor's offense on the victim's physical and financial condition. We therefore reject Naydihor's claim that

Judge Schroeder's sentence was vindictive in violation of his constitutional due process rights.

## CONCLUSION

¶ 36.   We conclude that the prosecutor's remarks at the resentencing did not breach the terms of Naydihor's plea agreement and, as a result, Judge Schroeder did not err in denying Naydihor's request for a *Machner* hearing. We further conclude that Judge Schroeder properly considered new information as to the victim's physical and financial condition prior to resentencing. Finally, we are satisfied that the new information cited by Judge Schroeder was relevant to the sentencing decision and that the increased sentence was not the result of judicial vindictiveness in violation of Naydihor's due process rights. We therefore affirm the judgments and order.

*By the Court.*—Judgments and order affirmed.