STATE, Respondent, v. LEONARD, Appellant.

*No. State 128. Argued May 8, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 577.)

462

464

For the appellant there were briefs by *Lowry, Hunter & Tikalsky*, attorneys, and *Donald J. Tikalsky* and *James L. Steimel* of counsel, all of Waukesha, and oral argument by *Mr. Steimel*.

For the respondent the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *Roger P. Murphy*, district attorney of Waukesha county.

A brief amicus curiae was filed by *Robert H. Friebert*, public defender, for John F. Leonard.

WILKIE, J. Two issues are presented on this appeal:

1. On resentencing may a defendant be given a harsher sentence than the one originally imposed?

2. On resentencing was the defendant here given credit for time already served under the original sentence?

*Increased Sentence on Resentencing.*

The first issue raises a question of first impression in this court. Essentially, defendant's argument is that the

imposition, or potential imposition, of a greater sentence upon one who successfully pursues a postconviction remedy resulting in resentencing, or in redetermination of guilt followed by resentencing, unconstitutionally inhibits the seeking of postconviction redress. Defendant argues that his right to challenge the proceedings that led to his conviction and sentence should not be conditioned upon his willingness to submit to the risk of an increased punishment over that which was previously imposed. The state public defender in his amicus curiae brief informs the court that it is the practice of his office to advise all clients on the possibility of an increased penalty if they are successful in their appeal. The defender believes that this possibility discourages many prisoners from challenging the legality of their convictions.

Recently, several courts have dealt with the issue before this court. While many of these cases involve situations in which the defendant has successfully appealed his original conviction, and upon reconviction has been resentenced, we see no good reason for distinguishing those cases from situations involving only resentencing.

A recent annotation at 12 A. L. R. 3d 978 points out that a numerical majority of the decisions from other jurisdictions support the state's position in this case, *i.e.*, upon reconviction and resentencing for the same crime the sentencing court may increase the sentence and in fact may assess any sentence it believes appropriate within the maximum set by statute and the previous sentence is no limitation upon that authority.

Most courts in the majority have primarily premised their holding on the theory that in obtaining a new trial a defendant assumes the risk of a more severe sentence.[2] These courts reason that in asking for and receiving a

[2] *Hobbs v. State* (1963), 231 Md. 533, 191 Atl. 2d 238; *Hicks v. Commonwealth* (1962), 345 Mass. 89, 185 N. E. 2d 739; *Sanders v. State* (1961), 239 Miss. 874, 125 So. 2d 923; *Commonwealth v. Alessio* (1934), 313 Pa. 537, 169 Atl. 764.

new trial, a defendant must accept the hazards as well as the benefits that could result therefrom.

However, New Jersey and California and some other jurisdictions [3] have declined to follow the majority and have taken a minority position in opposition to allowing an increased penalty.

*State v. Wolf* [4] involved an appeal by the state from a trial court's order that the state could not seek the death penalty in the retrial of a defendant whose first conviction and sentence of life imprisonment had been reversed on appeal. The New Jersey Supreme Court, in affirming the trial court's order, found it unnecessary to decide the case under either the double-jeopardy or the due-process theories, and instead rested its decision on procedural policies, which it said are of the essence in the administration of criminal justice. To set the risk of a man's life as the price of an appeal from an erroneous conviction, the court reasoned, is a hardship so acute and so shocking that public policy cannot tolerate it. To the state's argument that many automatic and frivolous appeals would result from the court's decision, it was said:

". . . although the objective of deterring automatic and frivolous appeals may be a desirable one, accomplishment of the purpose by confronting the defendant with the possibility of a death sentence, if his appeal is successful, is inhumane since it does not take into account the merits of his claim of erroneous conviction of the homicide charged against him. In a choice between forcing the defendant either to surrender his right to an error free trial as well as his right of appeal, and to accept the life imprisonment sentence, or to put his life at stake again on retrial following a successful appeal, justice can follow only one course. That course is the one demanded by procedural fairness and principles of public policy, namely, prohibition of such a fearsome election, and the restriction of available punishment at a

---

[3] Annot. (1967), 12 A. L. R. 3d 978, 983.

[4] (1966), 46 N. J. 301, 216 Atl. 2d 586.

new trial to life imprisonment, if a second, conviction results." [5]

The California Supreme Court,[6] confronted with a fact situation substantially similar to that involved in *Wolf*, reached the same conclusion, though on grounds of double jeopardy, that no one should be faced with such a desperate choice.

Several 1967 decisions from courts of appeal from various federal circuits have sparked controversy over the question presently before this court. They present three alternative approaches:

1. Allow more severe sentencing without limitation. *United States v. Russell.*[7]

2. Impose an absolute prohibition on increased sentences. *Patton v. North Carolina.*[8]

3. Prohibit increased sentences unless events occur and come to the court's attention subsequent to the first sentence, which events warrant an increased penalty. *Marano v. United States.*[9]

In *United States v. Russell* the defendant had been convicted on eight counts of forgery and two counts of burglary. His sentence was "not less than two years nor more than six." [10] Defendant's conviction was set aside on habeas corpus and a new trial was held. The burglary counts were withdrawn and, after a jury trial, defendant was found guilty on the forgery counts. Defendant's new sentence included imprisonment of "not less than three and one-half nor more than seven years." [11] After remarking that the new sentence was within the legal limits, the court of appeals from the Third Circuit said:

---

[5] *Id.* at page 309.

[6] *People v. Henderson* (1963), 60 Cal. 2d 482, 35 Cal. Rptr. 77, 386 Pac. 2d 677.

[7] (3d Cir. 1967), 378 Fed. 2d 808.

[8] (4th Cir. 1967), 381 Fed. 2d 636.

[9] (1st Cir. 1967), 374 Fed. 2d 583.

[10] *United States v. Russell, supra,* footnote 7, at page 809.

[11] *Id.*

"When he [the defendant] appeared and entered a plea of not guilty at the second trial, the slate had been wiped clean and it was an entirely new case and bore no relationship whatsoever to his previous plea of guilty which he had entered.

". . . it would therefore seem to be the rule in the federal system that a trial judge, when a new trial is ordered, may impose a sentence greater than one he had earlier vacated, and that it is unnecessary to articulate the reason for any differentiation in the term of the sentence." [12]

In *Patton v. North Carolina,* the court of appeals from the Fourth Circuit laid down a blanket prohibition against any increase in a sentence on retrial following a successful appeal. Patton, without counsel, pleaded nolo contendere and was convicted of armed robbery. He was sentenced to prison for a term of twenty years. Later, he was awarded a new trial because he had had no counsel. On retrial he was again convicted and the trial judge increased his punishment by sentencing him to twenty-five years (against which the five years he had served were credited). The court of appeals held that the due-process and equal-protection clauses (and, though not necessary to the decision, the double-jeopardy prohibition of the fifth amendment) require a uniform rule barring the subsequent imposition of a sentence in excess of one which has been invalidated. The court pointed out that:

"The risk of a . . . greater sentence . . . may prevent defendants who have been unconstitutionally convicted from attempting to seek redress." [13]

An intermediate position was taken by the court of appeals from the First Circuit in the case of *Marano v. United States.* In *Marano* the defendant on reconviction was sentenced to five years rather than three as he had been originally sentenced. The court stated that a judge

---

[12] *Id.* at page 811.

[13] *Patton v. North Carolina, supra,* footnote 8, at page 639.

should not be permitted to change his mind by deciding that he had been too lenient the first time. However, the court held that it was proper in resentencing for the court "to take subsequent events into consideration, both good and bad." [14] At the second sentencing a presentence report had been received disclosing new circumstances. The court of appeals reversed and remanded for resentencing since (1) the new circumstances were not the sole ground for the increase in sentence, and (2) the presentence report may not have been enough, standing alone, to support the new sentence.

The court went on, in a footnote, to suggest that a trial court affirmatively state its grounds when it increases a sentence.

The court of appeals from the Seventh Circuit, in *United States v. White*,[15] recently considered all three of these approaches by sister circuits. The defendant's conviction and sentence had been set aside and a new trial ordered. The defendant had received concurrent sentences of six months' imprisonment plus thirty months' probation. Following the reversal, a new trial was held, the defendant was convicted and a longer prison term imposed. On appeal the defendant claimed that the longer prison term following the second trial violated the due-process clause and double-jeopardy provision of the constitution. In rejecting this argument the court held that:

". . . when, as here, it appears in the record that the sentencing judge is not penalizing the defendant for having exercised his right to appeal, the imposition of a greater sentence upon reconviction does not constitute a denial of due process and that such action lies within the discretion of the district judge." [16]

The court rejected the "sweeping and inflexible" prohibition against increased sentences set forth in *Patton*

[14] *Marano v. United States, supra,* footnote 9, at page 585.

[15] (7th Cir. 1967), 382 Fed. 2d 445.

[16] *Id.* at page 448.

*v. North Carolina* and the suggestion in *Marano* that the resentencing judge affirmatively disclose the particular facts bearing upon the exercise of his discretion which he had on resentencing, as per *Russell,* with which approach the court agreed.

The United States Supreme Court has yet to reach the exact issue presented in this case. In *Stroud v. United States* [17] (the defendant in that case being Robert F. Stroud who was immortalized as the "Birdman of Alcatraz" in the book by Thomas E. Gaddis), the court upheld a judgment of conviction imposing the death penalty following the reversal of a conviction fixing the punishment at life imprisonment. The *Stroud Case,* however, was grounded only on the double-jeopardy provision of the constitution. The holding in *Stroud* has been eroded or abandoned in *Green v. United States,* [18] where the court held *Stroud* "clearly distinguishable" and the double-jeopardy clause offended when a conviction of first-degree murder, carrying a death sentence, was ordered upon retrial following the reversal of a conviction of second-degree murder, carrying only imprisonment. A harbinger of the direction the supreme court might take when confronted with this issue may be found in the recent case of *United States v. Jackson,* [19] decided on April 8, 1968. There the court looked aghast on "choices" that can involve discouraging assertions of constitutional rights and held that the death penalty of the "Lindbergh" Act [20] was unconstitutional. The section of the Act under attack provided that the death penalty could only be imposed if recommended by a jury. A person who pleaded guilty or waived trial by jury could not be sentenced to death. This, the court held, "needlessly penalizes the assertion of a constitutional right." [21]

[17] (1919), 251 U. S. 15, 40 Sup. Ct. 50, 64 L. Ed. 103.
[18] (1957), 355 U. S. 184, 78 Sup. Ct. 221, 2 L. Ed. 2d 199.
[19] (1968), 390 U. S. 570, 88 Sup. Ct. 1209, 20 L. Ed. 2d 138.
[20] Federal Kidnapping Act, 18 U. S. Code, sec. 1201 (a).
[21] *United States v. Jackson, supra,* footnote 19, at page 1217.

At least three state courts have expressed their reactions to the decisions of the courts of appeal.

The Special Appeals Court of Maryland in *Moon v. State*,[22] after citing the conflict in *Marano, Russell*, and *Patton*, and noting the absence of an authoritative ruling by the Supreme Court of the United States, chose to allow increased sentences.

The North Carolina Supreme Court, in *State v. Paige*,[23] held that an increased sentence could be imposed, saying:

"The defendant was granted a new trial at his request and under our decisions that resulted in a retrial of the whole case—verdict, judgment, and sentence. State v. White, 262 N. C. 52, 136 S. E. 2d 205. Three United States Courts of Appeals—the 7th, 10th, and 3rd Circuits —have recently affirmed harsher sentences following retrial: United States v. White, 382 F. 2d 445 (7th Cir., 1967) ; Newman v. Rodriguez, 375 F. 2d 712 (10th Cir., 1967) ; United States ex rel. Starner v. Russell, 378 F. 2d 808 (3d Cir.), cert. den. 389 U. S. 889, 88 S. Ct. 166, 19 L. Ed. 2d 189 (1967). We are aware of a contrary opinion by the 4th Circuit in the case of Patton v. State of North Carolina, 381 F. 2d 636 (4th Cir., 1967). We are also aware that the Attorney General of the State of North Carolina has petitioned the United States Supreme Court for a writ of *certiorari* to review the decision in the Patton case."

The Oregon Supreme Court, in *State v. Turner*,[24] chose to adopt the approach advocated in *Patton*, which approach was recommended by the Advisory Committee on Sentencing and Review of the American Bar Association Project on Minimum Standards for Criminal Justice in its tentative draft of "Standards Relating to Post-Conviction Remedies." The following standard is proposed:

"**6.3 Sentence on re-prosecution of successful applicants; credit for time served.**

"(a) Where prosecution is initiated or resumed against an applicant who has successfully sought post-conviction

---

[22] (1967), 1 Md. App. 569, 232 Atl. 2d 277.
[23] (1968), 272 N. C. 417, 158 S. E. 2d 522, 528.
[24] (Or. 1967), 429 Pac. 2d 565.

relief and a conviction is obtained, or where a sentence has been set aside as the result of a successful application for post-conviction relief and the defendant is to be re-sentenced, the sentencing court should not be empowered to impose a more severe penalty than that originally imposed.

"(b) Credit should be given towards service of the minimum and maximum term of any new prison sentence for time served under a sentence which has been success-fully challenged in a post-conviction proceeding." [25]

In its commentary on sec. 6.3, the Advisory Committee states:

"Care should be taken to prevent the imposition of more harsh sentences, or the implicit threat of the possibility, from deterring applicants with meritorious claims from presenting them for vindication. There is some evidence that this repressive attitude exists today. 'The only hope for straightening things out is to give some "Gideonite" a new trial and reconvict him,' said a clerk of court in Escambia County, Florida. 'If we give him a heavier sentence than he got the first time, maybe that will serve as a lesson to the others.' Time Magazine, Oct. 18, 1963, p. 53. A trial judge in Delaware County, Pennsylvania, denying a defendant credit for over three years of time already served under an invalidated sentence, said: 'This is the risk these prisoners take when they seek to take advantage of new legal interpretations.' Delaware County (Pa.) Daily Times, March 24, 1965, sec. 2, p. 1 . . . .

"In light of these constitutional concerns and the prob-able deterrent effect if increased sentences are imposed upon successful post-conviction relief applicants, the Ad-visory Committee recommends that the original sentence operate as a ceiling in cases where a new conviction is obtained. Even though new facts may be brought to light which might occasionally warrant a heavier sentence, the Advisory Committee believes it is preferable to establish a standard that is prophylactic in effect, and easily ad-

---

[25] *Standards Relating to Post-Conviction Remedies*, Tent. Draft 1967 at pp. 94, 95.

ministered, whereby sentencing judges are not given power to increase a sentence when an applicant has exercised his right to seek a post-conviction remedy. This takes the matter out of the discretion of the sentencing judge. Some members of the Advisory Committee would prefer merely to admonish sentencing judges not to penalize applicants who have sought relief, but the majority concluded that a mandatory ceiling is necessary. The Advisory Committee also recommends that the original sentence operate as a binding ceiling when the contention upheld in the post-conviction proceeding concerned the sentence or sentencing process. . . ." [26]

The Oregon court's decision was not premised on constitutional grounds, but, like the New Jersey court in *Wolf*,[27] it rested on procedural policy.

The writer of this opinion is the only member of the court who would adopt the approach approved in *Patton* and *Turner*, and recommended by the proposed standards advocated by the ABA. The writer is persuaded by the reasoning of the court of appeals from the Fourth Circuit that any increase in sentencing constitutes a violation of the due-process and equal-protection guaranties of the United States Constitution. Six justices believe that until the United States Supreme Court has spoken unequivocally on this issue the approach of *Marano* is correct. Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.

We now proceed to apply this standard to the instant case.

---

[26] *Id.* at pages 95, 96.
[27] *Supra*, footnote 4.

Defendant argues that Judge CALLOW did not have any new facts before him at the resentencing to warrant a penalty of increased severity. The state contends that at the resentencing, the court first became aware of the fact that defendant had three past felony convictions that were unknown when the original sentence was imposed.

The record discloses the following:

The defendant first appeared before Judge CALLOW on June 6, 1966, and on June 23, 1966, the court withheld passage of sentence and placed him on probation for a period of three years. At the June 23, 1966, sentencing, the court was informed that the defendant had just been released from the Iowa state penitentiary, where he had served eighteen months of a three-to-five-year sentence.

The defendant then appeared before the court on February 13 and 14, 1967, for sentencing following revocation of the probation. At this time the court had before it a probation return order which indicated that defendant had operated a motor vehicle without an operator's license while on probation. The testimony of Probation Officer George Hanson established that the defendant was originally placed on probation in Racine county on September 25, 1963. The Racine charge was issuance of worthless checks. Defendant absconded and subsequently was arrested in Iowa on worthless-check charges. He then served the eighteen months in the Iowa state penitentiary.

In September, 1967, after granting defendant's motion to vacate the sentence, the court was informed, apparently by the district attorney from an FBI report, that the defendant's background included a 1956 forgery conviction in Chicago and 1958 burglary and forgery convictions in Milwaukee. Apparently based on defendant's entire record the harsher sentence was imposed. We say "apparently" because nowhere does the record show the reasons for the trial court's action.

A minority of the court (three members) concludes that the sentencing court did have information of subse-

quent events (information first brought to the sentencing court's attention at the time of resentencing), and that the increased sentence was based on this new information about previous crimes. The majority, however, is not convinced that the court relied solely on this information in increasing the sentence and did not satisfactorily state reasons for the record why the increased sentence was imposed. We therefore remand for resentencing in accordance with the standards herein adopted.

*Credit for Time Served.*

This brings us to the second issue presented on this appeal, whether credit was given to the defendant for time already served. Defendant claims he has not been given credit for the time he served between February 14, 1967, and October 4, 1967.

Before resentencing, the court correctly stated:

"This court would observe that the law of Wisconsin provides that any time previously served by the defendant shall be considered as time served upon any subsequent sentence imposed and this right accrues to Mr. Leonard's advantage."

The state argues that there is nothing in the record indicating that the court did not give the defendant credit and "the only conclusion that can legitimately be reached on the basis of this record is that credit was given and that the sentence imposed is the net sentence." In essence, the state's argument is that the court would have imposed a longer sentence than it actually did had credit not been allowed.

The state's contention here misses the point. The principle of fair play insists that judges in passing sentence give credit for time already served. Sec. 6.3 (b) of the ABA standards recommends that credit be given. Wis-

consin statutes, sec. 958.06 (3), so provide.[28] Even if the state's theory is accepted, the defendant is only given credit off the top of his sentence. This reduces his maximum but not the minimum. Under the old sentence, the defendant would have been eligible for parole after one year. Under the new sentence, he is eligible after two years (one year must be served on each consecutive count). If defendant is truly given credit for *time served,* he must be deemed to have *served* the almost nine months between sentences. Under the state's conception of the procedures, defendant is apparently only given time off the maximum and his parole eligibility date will be extended nine months. This view is without merit. Although a minority of the court (three members) would modify the judgment so as to give the defendant credit for the period of February 14 to October 4, 1967, as *time served* under the new sentence, a majority concludes that rather than have this court modify the judgment, the sentencing court should give the proper credit on resentencing by providing that time already served is to be considered as time first served on the sentence.

*By the Court.*—Sentence vacated and cause remanded for resentencing in a manner consistent with this opinion.

---

[28] "(3) (a) A new trial shall proceed in all respects as if there had been no former trial. On the new trial the defendant may be convicted of any crime charged in the indictment or information irrespective of the verdict or finding on the former trial. The former verdict or finding shall not be used or referred to on the new trial.

"(b) If the new trial results in the conviction of the defendant, the trial court shall make allowance for and deduct from sentence imposed whatever time of imprisonment the defendant has served by reason of the acts constituting the offense with which he is charged, so that upon no account may the aggregate term exceed the maximum term provided by the statutes therefor.

"(c) If a defendant is convicted following a new trial and is sentenced to a term of confinement, any time served in prison under the earlier sentence for the same offense shall be counted as time served in establishing eligibility for parole under s. 57.06 (1) (a)."

Robert W. Hansen, J. (*dissenting*). The majority has written a very broad decision on a very narrow point of law. So this dissent is to the dicta as well as to the result.

What can only be described as dicta is the majority opinion's reaching out to limit a trial court's sentence imposing authority following a new trial in a criminal case. All that is before the court in this case is the authority of a trial court to impose a sentence in the situation where a sentence has been set aside but the trial and finding of guilt have not been.

The majority "see no good reason" for distinguishing the situation where resentencing alone is involved from the more usual case where a new trial has been ordered, held, and, on the finding of guilt, the defendant is again before the court for sentencing. The very words, "new trial," suggest the difference. A second trial is not a movie film played over again for a second time. If it were, there would be little reason for seeking a second showing. As every trial lawyer knows, no two trials are alike. A defense attorney may not succeed in shaking the testimony of an eyewitness the second time around. An alibi attempt that was convincing on a first trial may deteriorate to transparent perjury on a re-trial. A defendant on the witness stand may drop a pose of contriteness and reveal an underlying hostile, psychopathic attitude toward the victim or society. Variants in the two trials may well go beyond the finding of guilt to be pertinent on the question of the proper sentence to be imposed. It is enough to require a trial judge, on the evidence presented and record made in the case he has just heard, to impose the proper and indicated sentence. A trial judge would have to have the memory of an elephant to recall the earlier case, place, side by side, testimony elicited on a particular point in each case, compare and evaluate the two records. To require an "affirmative showing" of the differences between two cases as the only basis for an increased sentence on new trials is to place upon trial judges a heavy burden. Where the same judge tries both

cases, it is to require the barely possible. Where a different judge conducts the second trial, it is to require the impossible.

There is an obvious difference between dollars awarded in a personal injury suit and time spent in a penal institution, but it ought not blur the sound reasons for the traditional insistence that a new trial means or should mean a new trial, a starting over again, a beginning anew —in all types of litigation, criminal trials included. The majority opinion concedes that the clear majority of the decisions from other jurisdictions hold that, where a new trial is ordered, it is to mean an entirely new trial on the question of guilt or innocence and as to the sentence to be imposed. The trial court that is considered competent to determine the issue of guilt is considered competent to decide the proper sentence to be imposed, with neither ceiling nor basement to be set in advance by the appellate courts. Two cases, one in California and one in New Jersey, are cited in the majority opinion to justify the contrary result of assuring defendants that, while they might not win on a new trial, they will not lose more than they have already lost. Both involved death penalties. Understandably, judges shrink from exposing a defendant who has once escaped the noose or gas chamber from risking the death penalty in the new trial that he sought. However, judicial tailoring of sentencing procedures to avoid a gallows consequences of a new trial is not the most persuasive authority for generally placing a halter on the right of a trial judge to impose the sentence he finds proper, particularly in a state that long ago abandoned the death sentence. As Gertrude Stein would have put it, a new trial is a new trial is a new trial or should be. As to the suggestion that the possibility of a more unfavorable outcome of a new trial deters convicted criminals from seeking postconviction remedies, the quintupling in very recent years of filing of appeals, writs of error and writs of habeas corpus, gives very little support to such implication.

We come then to the only question raised by this appeal: Was the trial court in this case justified in imposing, on resentencing only, a penalty of increased severity? In this much narrower area of appellate review, we see no reason to dissent from the *Marano v. United States* result that the trial court has the right ". . . to take subsequent events into consideration, both good and bad." [1] In such situation, as far as the case is concerned, there has been just one trial. That trial is over, the record is made, the finding of guilt has been entered. There is here no problem presented of comparing and evaluating differences, variances and nuances between two separate trials. The only variable would necessarily involve new presentence information, either more favorable or less favorable to the defendant. If no new and additional information favorable to the defendant comes to the court on the second sentencing, the defendant is not entitled to expect or secure a lessened sentence. If no new information unfavorable to the defendant is presented on the second sentencing, not presented at the time of the first sentence imposition, the defendant is entitled to expect that no sterner penalty will be imposed. If nothing new has been added, favorable or unfavorable to the defendant, it would follow that the same sentence would be reimposed.

However, applying this yardstick to the sentence imposed in the case before us shows no reason for reversing what the trial court did in this case. Seven months before he appeared before Judge CALLOW in this case, the defendant had been before Judge CALLOW for sentencing on a plea of guilty and a finding of guilty on 16 counts of issuing worthless checks and four counts of forgery. He was then placed on probation for three years conditioned on making restitution and paying court costs. When he reappeared for sentencing following revocation of probation, he was given three-year-concurrent sentences on the

---

[1] *Marano v. United States* (1st Cir. 1967), 374 Fed. 2d 583, 585.

four forgery counts. This sentence was set aside because of lack of counsel at the time of imposing sentence. On the appellate court-ordered resentencing, the same sentence was imposed except that two of the four forgery terms were to be served consecutively.

In the interim between the two sentencing hearings, something new had indeed been added. At the resentencing, to quote the majority opinion, ". . . the court first became aware of the fact that defendant had three past felony convictions that were unknown when the original sentence was imposed." The probation officer's testimony at the resentencing established that the defendant's background included a 1956 forgery conviction in Chicago and 1958 forgery and burglary convictions in Milwaukee. Particularly for a type of crime in which the rate of recidivism is high, it is difficult to imagine a more compelling reason for an increased sentence than this new evidence of two earlier convictions of the same offense plus another felony conviction. The majority opinion states that "Apparently based on defendant's entire record the harsher sentence was imposed." Who would disagree? Nonetheless, the majority sends the case back because it is ". . . not convinced that the court relied solely on this information . . . and did not satisfactorily state the reasons for the record . . . ." It appears predictable that, aside from a perhaps welcome break in prison routine, nothing will be accomplished by having the defendant return to hear the same sentence pronounced on the same record and for the same reason. Where the trial court's action so transparently meets the test set by the majority ruling, little will be accomplished by the trip from Waupun to Waukesha and return.

On the question of whether the defendant is entitled to credit for time served on the first sentence, the trial court stated: "This court would observe that the law of Wisconsin provides that any time previously served by

the defendant shall be considered as time served upon any subsequent sentence imposed and this right accrues to Mr. Leonard's advantage." The majority agrees that this is correctly stated. To contend that the trial judge was intending that no credit be given for time already served on the sentence he was then imposing is to go beyond the clear meaning of the sentence. This is a trial court mandate to the state agency involved to give credit to the defendant as to eligibility for parole and as to completion of sentence for the time served on the first sentence. The defendant is to be given credit for the period of February 14 to October 4, 1967, as ordered by the trial judge. If the state prison authorities were to challenge the right of a trial court to thus order credit given for time served (and no such challenge is even suggested by the record) that bridge can be crossed when it is encountered.

The judgment of the trial court should be affirmed. I am authorized to state that Mr. Justice LEO B. HANLEY joins the writer in this dissent.