STATE of Wisconsin, Plaintiff-Respondent,

v.

William J. CHURCH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–3100–CR. Oral argument February 13, 2003.—Decided July 1, 2003.*

2003 WI 74

(Also reported in 665 N.W.2d 141.)

678

For the defendant-appellant-petitioner there were briefs and oral argument by *James L. Fullin,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. DIANE S. SYKES, J.   The issue in this case is whether an increased sentence imposed upon the defendant following a successful appeal was presumptively vindictive, in violation of the defendant's right to due process, and, if so, whether the presumption was overcome by adequate, objective new factors in the record justifying the longer, post-appeal sentence. Under the circumstances here, we conclude that the longer sentence violated due process.

¶ 2.   In 1996, a jury found William Church guilty of five offenses: second-degree sexual assault, child sexual exploitation, delivery of a controlled substance, and two counts of child enticement. Prior to sentencing, Church moved to dismiss one of the two counts of child enticement as multiplicitous, but the circuit court denied the motion. The court imposed a 13-year prison term on the sexual assault count and withheld sentence on the remaining counts, ordering probation terms of various lengths, consecutive to the prison sentence but concurrent to each other. Church appealed, again arguing that the two child enticement counts were multiplicitous.

¶ 3.   The court of appeals agreed, and reversed one of the two child enticement counts. However, instead of simply vacating the conviction and the order of concurrent probation on one count of child enticement, the court of appeals vacated all the sentences in the case and remanded for resentencing on the four remaining counts, citing *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983). On remand, the circuit court im-

681

posed 17 years on the sexual assault count, a four-year increase, and reimposed the terms of probation on the remaining three counts. The court of appeals affirmed.

¶ 4. We conclude that resentencing on convictions that remain intact after an appellate court reverses and vacates one or more counts in a multi-count case is not always required. Where, as here, the vacated count did not affect the overall dispositional scheme of the initial sentence, resentencing on the remaining counts is unnecessary and therefore not required. Here, however, Church himself requested resentencing as a remedy for the multiplicity of the child enticement counts. Upon resentencing, he received more than a reimposition of the original dispositional scheme. We conclude that the increased sentence was presumptively vindictive, in violation of Church's right to due process, and that the presumption was not overcome by adequate, objective new factors in the record justifying the increase.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5. William J. Church, age 39, from Cedar Rapids, Iowa, was charged in Dane County Circuit Court with five criminal counts: second-degree sexual assault contrary to Wis. Stat. § 940.225(2)(d), sexual exploitation of a child contrary to Wis. Stat. § 948.05(1)(a), delivery of a controlled substance (tetrahydrocannabinols-THC) to a minor contrary to Wis. Stat. § 961.41(h)(1), and two counts of child enticement contrary to Wis. Stat § 948.07 (1995–96).[1]

¶ 6. All five counts stemmed from a calculated criminal episode in which Church arranged to take a 17-year-old boy from his church in Cedar Rapids to

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–1996 volumes unless otherwise indicated.

Wisconsin Dells, ostensibly for a brief vacation, but actually for purposes of sexual gratification. En route to the Dells, Church and the victim checked into a motel in Madison. There, Church gave the boy a marijuana cigarette and an alcoholic beverage laced with a prescription narcotic drug. When the boy fell asleep, Church sexually assaulted him and photographed his genitalia. The boy awoke during an act of sexual contact by Church, went to the lobby, called his pastor's house and then the police. A jury found Church guilty on all counts.

¶ 7. Before sentencing, Church moved to dismiss one of the two counts of child enticement on multiplicity grounds. The motion was denied.

¶ 8. At sentencing, the prosecution recommended a sentence totaling 33 years in prison. The circuit court, the Honorable Sarah B. O'Brien, noted Church's educational background (some college), "solid employment history," stable family background, "strong circle of friends centering around his church," and lack of any criminal record.

¶ 9. On the other hand, the circuit court expressed concern about Church's "deceitful" behavior and the premeditation of the offense, which the court characterized as "cold-blooded" and "pretty chilling." The circuit court noted that Church had failed to take any responsibility for the offenses, and expressed concern about the "ample reason to suspect that Mr. Church would reoffend" based on evidence of his "grooming behavior" with this victim and other boys. In this regard, the circuit court took note of a collection of photos of nude children and explicit notes in the defendant's handwriting that had been found at his home. The circuit court sentenced Church to 13 years in prison on the second-degree sexual assault count.

Sentence was withheld on the other counts in favor of probation terms as follows: ten years on the sexual exploitation count, six years on the delivery of THC count, and 24 years each on the two counts of enticement, all consecutive to the prison term but concurrent to each other.

¶ 10. Church appealed on the multiplicity issue, and the court of appeals reversed one of the two counts of child enticement as multiplicitous. *State v. Church,* 223 Wis. 2d 641, 665, 589 N.W.2d 638 (Ct. App. 1998).[2] Noting that its "disposition would not, in itself, affect the duration of Church's prison sentence or of his subsequent term of supervision," the court of appeals nevertheless concluded that it "must vacate all sentences imposed for each of Church's four remaining convictions, and remand for re-sentencing on one count each of second-degree sexual assault, child enticement, sexual exploitation of a child, and delivery of THC to a minor." *Church,* 223 Wis. 2d at 665–66 (citing *Gordon,* 111 Wis. 2d at 146).

¶ 11. On remand, the circuit court ordered an updated presentence investigation report (PSI). The updated PSI indicated that Church had been incarcerated at Dodge Correctional Institution in Wisconsin from May to October of 1997 and in the county jail in Titus, Texas, from October 1997 through May 2000. In May of 2000, Church was transferred back to Dodge Correctional.

---

[2] We initially granted the State's petition to review the court of appeals' decision regarding the multiplicity of the two child enticement charges, but later dismissed the petition as improvidently granted after the State changed its position and conceded multiplicity. *See State v. Church,* 2000 WI 90, 236 Wis. 2d 755, 613 N.W.2d 848.

¶ 12. In July of 1998 and again in January of 1999, the Program Review Committee recommended that Church remain in Texas rather than transfer to another facility. The PRC reported that while in Texas, Church was assigned as a kitchen trustee, attended church services, and had an "excellent" record of conduct. During his four years of incarceration prior to resentencing, Church was not involved in any sex offender treatment programs.

¶ 13. At the resentencing hearing, Dr. Margaret Alexander, Clinical Director of the Sex Offender Treatment Program at the Oshkosh Correctional Institution, testified that sex offender treatment in prison typically lasts for four years and is implemented as an inmate approaches his date of release. Dr. Alexander explained the rationale for deferring sex offender treatment until the end of an inmate's sentence as follows:

> The idea is that they finish the program and make a transition back to the community without spending further time in [criminal] populations where some of the new found skills and habits would stand a large possibility of getting erased.

¶ 14. Further testimony established that sex offender treatment is usually not appropriate until an offender is no longer in denial. There was no evidence that Church would have been admitted into sex offender treatment during the four years of incarceration prior to his resentencing. Sex offender treatment was not available at the Titus, Texas, facility.

¶ 15. Church argued for the same prison sentence and probation that was previously imposed on the four counts that remained after his successful appeal. For the first time, he expressed some remorse and a desire to seek treatment. The prosecution again asked for a

prison sentence totaling 33 years. The circuit court imposed a prison sentence of 17 years on the sexual assault count, an increase of four years, followed by the same probationary terms as originally imposed on the remaining three counts. The circuit court justified the increase as follows:

> I feel that we are in exactly the same position we were in when Mr. Church sat before me almost four years ago . . . The offense remains just as serious, the character of the defendant has not changed in any way, the protection of the public remains a very serious concern. The only thing that has changed is nearly four years have passed and Mr. Church . . . [has today] made his first step towards admitting responsibility and seeking help for his very significant problems. I feel that those four years have been wasted and that to impose the same sentence today would in effect give Mr. Church credit for spending the last four years without acknowledging his offense and without doing anything to obtain treatment.

¶ 16. Church moved for sentence modification, which was denied. He appealed, and the court of appeals affirmed the increased sentence. *State v. Church,* 2002 WI App 212, 257 Wis. 2d 442, 650 N.W.2d 873. We granted Church's petition for review, and now reverse.

## II. STANDARD OF REVIEW

¶ 17. Whether an increased sentence imposed upon a defendant after a successful appeal violates a defendant's right to due process under the federal and state constitutions is a question of law that we review de novo. *State v. Sorenson,* 2002 WI 78, ¶ 25, 254 Wis. 2d 54, 646 N.W.2d 354 ("Due process determinations are questions of law that we decide de novo."). *See also State*

v. *Carter,* 208 Wis. 2d 142, 146 n.1, 560 N.W.2d 256 (1997)(de novo review of proper resentencing considerations); *State v. Martin,* 121 Wis. 2d 670, 673, 360 N.W.2d 43 (1985).

## III. ANALYSIS

¶ 18.   This case presents two issues for review: (1) whether the court of appeals was required to remand this case for resentencing on all remaining counts after reversing one of the multiplicitous child enticement counts; and (2) whether the circuit court's increased sentence was presumptively vindictive, in violation of Church's right to due process, and, if so, whether the presumption was overcome by adequate, objective new factors in the record justifying the harsher sentence.

### A. Remand for Resentencing

¶ 19.   On the multiplicitous child enticement counts, Church received concurrent 24-year probation terms, consecutive to the prison term on the sexual assault count. Rather than simply vacating one of the two counts of child enticement held to be multiplicitous and remanding for a corresponding amendment to the judgment of conviction, the court of appeals vacated all remaining sentences in the case and remanded for resentencing. *Church,* 223 Wis. 2d at 665–66. The court of appeals cited this court's decision in *Gordon* as requiring resentencing on the surviving counts. *Id.* We disagree.

¶ 20.   In *Gordon,* the defendant was convicted and sentenced as follows: kidnapping, 15 years; robbery, eight years concurrent; burglary, eight years concurrent; and second-degree murder, 15 years consecutive. *Gordon,* 111 Wis. 2d at 134–35. The defendant ap-

pealed, alleging that the conviction and sentence for kidnapping, which was the predicate felony for the second-degree murder conviction, violated double jeopardy. *Id.* at 135. We concluded that the conviction and sentence for kidnapping as well as second-degree murder predicated upon kidnapping violated double jeopardy, and vacated the kidnapping count. *Id.* at 146. However, we also summarily vacated the sentences on the surviving counts: "The sentence for second-degree murder, robbery, and burglary must also be vacated and the case remanded for resentencing on all charges." *Id.* (citing *State v. Morris,* 108 Wis. 2d 282, 290, 322 N.W.2d 264 (1982); *Robinson v. State,* 102 Wis. 2d 343, 356, 306 N.W.2d 668 (1981); *State v. Upchurch,* 101 Wis. 2d 329, 335–36, 305 N.W.2d 57 (1981); *Ronzani v. State,* 24 Wis. 2d 512, 520, 129 N.W.2d 143 (1964)).

¶ 21.  We did not further explain in *Gordon* the circumstances under which a remand for resentencing is required when one or more counts in a multi-count case is vacated on appeal, leaving other counts intact. It is clear, however, that the elimination on double jeopardy grounds of one of the four counts in *Gordon* disturbed the original sentence structure, which called for the defendant to serve a total of 30 years in prison. The two eight-year sentences for robbery and burglary were concurrent, but the two 15–year sentences for kidnapping and second-degree murder were consecutive. Vacating the kidnapping conviction and sentence upset the overall sentencing structure, frustrating the intent of the original sentence. Remand for resentencing was necessary and appropriate, to allow for a restructuring of the remaining sentences to carry out the intent of the original dispositional scheme.

¶ 22.  Remand for resentencing in *Gordon* was supported by the precedent cited in the case. In *Morris,*

108 Wis. 2d 282, the defendant was convicted and sentenced to two and one-half years for armed robbery and two years consecutive for concealing identity. We held that concealing identity was not a separate offense, but, rather, a penalty enhancer, and therefore the two sentences for what was a single, enhanced offense, violated double jeopardy. *Id.* at 283. In ordering a remand for resentencing, we invoked our decision a year earlier in *Robinson,* 102 Wis. 2d at 356, which had also involved separate sentences for armed robbery and concealing identity:

> In *Robinson* this court said:
>
> "Accordingly, rather than attempting to infer at the appellate level what sentence the trial court would have imposed had it proceeded on the proper assumption that concealing identity aggravates armed robbery but does not stand as a separate substantive offense, we conclude that the trial court is the proper court to resentence the defendant under a correct application of the law. We therefore vacate the judgment of conviction for concealing identity, vacate both sentences as imposed, and remand to the trial court for resentencing on the conviction of armed robbery, under circumstances where identity was concealed."

*Morris,* 108 Wis. 2d at 290 n.5 (quoting *Robinson,* 102 Wis. 2d at 356).

¶ 23.  Similarly, in *Upchurch,* 101 Wis. 2d 329, we concluded that separate, consecutive one-year sentences for possession of a controlled substance and habitual criminality violated double jeopardy, because the repeater statute was a penalty enhancer, not a separate offense. *Id.* at 335. We remanded for resentencing on the single, enhanced offense in order not to frustrate the intent of the original sentence. *Id.* at 336 (holding that a contrary result would "tend to make the

sentencing proceeding a game wherein a misstatement by the trial judge would result in a windfall to the defendant").

¶ 24. Also, in *Ronzani,* 24 Wis. 2d 512, the defendant was convicted of attempted armed robbery and third-degree murder (then also known as felony murder), predicated upon the attempted armed robbery, and sentenced to 15 years on the felony murder count, and ten years consecutive on the attempted armed robbery count. We concluded that the conviction and sentence on the attempted armed robbery count was error because attempted armed robbery was a lesser-included offense of third-degree felony murder predicated on the attempted armed robbery. *Id.* at 519. We remanded for resentencing because the reversal of the attempted armed robbery count disturbed the structure of the overall sentence:

> We have determined to remand for resentencing because the original sentence of Ronzani for third-degree murder may reflect the trial court's erroneous conclusion that a consecutive sentence could also be given for the attempted armed robbery.

*Ronzani,* 24 Wis. 2d at 520.

¶ 25. We have never held, however, that remand for resentencing is *always* required, even where the vacated count in a multi-count case has no affect whatsoever on the overall sentence structure, as is the case here. The court of appeals correctly noted our overstatement and under-explanation of the *"Ronzani-Gordon"* line of cases in *Martin,* 121 Wis. 2d 670.

> The supreme court subsequently explained what it referred to as the *"Ronzani-Gordon"* line of cases in this way:
>
>> The *Ronzani-Gordon* line of cases

690

> demonstrates that when a defendant is convicted of and sentenced for two offenses which are later held to be the same offense, and when one conviction and sentence is vacated on double jeopardy principles, the validity of both punishments is implicated, the sentences for both offenses are illegal, and resentencing on the valid conviction is permissible.

*State v. Martin,* 121 Wis. 2d 670, 681, 360 N.W.2d 43 (1985).

> However, this explanation apparently overlooks the fact that the court in *Gordon* used this rationale to invalidate not only the sentence on the conviction that was the "same offense" for double jeopardy purposes, but also the sentences on the other, separate offenses, the convictions of which were not involved in the double jeopardy challenge. This analysis in *Martin* does not explain the reason for vacating the sentences on the convictions that are not involved in the double jeopardy challenge—there is nothing invalid or illegal about them.

*Church,* 257 Wis. 2d, ¶ 14 n.7.

¶ 26.   A double jeopardy bar to one conviction and sentence in a multi-count case does not operate to invalidate the sentences on all the remaining counts, nor does it necessarily invalidate the sentence on the specific surviving parallel count which gave rise to the double jeopardy challenge. The court of appeals was entirely correct that "there is nothing invalid or illegal" about the sentences on the counts that remain after a successful double jeopardy challenge. *Martin* and the *Ronzani-Gordon* line of cases hold that resentencing is procedurally and constitutionally permissible if the

691

invalidation of one sentence on double jeopardy grounds disturbs the overall sentence structure or frustrates the intent of the original dispositional scheme. *Martin,* 121 Wis. 2d at 682. Resentencing is unnecessary, and certainly not required, where, as here, the invalidation of one count on double jeopardy grounds has no affect at all on the overall sentence structure.

¶ 27. As we have noted, however, Church himself requested resentencing as a remedy for the multiplicity of the child enticement counts. He argued at resentencing for reimposition of the same overall sentence. Instead, he received four more years in prison. But for his successful appeal, Church would be serving a 13–year sentence. Because of his successful appeal, he is now serving a 17–year sentence.

B. Vindictiveness/Due Process

¶ 28. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin,* 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978)).

¶ 29. In *North Carolina v. Pearce,* 395 U.S. 711, 725 (1969), the United States Supreme Court held that "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." The Court further held that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of

apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.*

¶ 30. It is clear, then, that "[w]hile sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment," due process requires that "it must not be exercised with the purpose of punishing a successful appeal." *Alabama v. Smith,* 490 U.S. 794, 798 (1989) (citing *Pearce,* 395 U.S. at 723–725).

¶ 31. To protect defendants against due process violations upon resentencing, the Supreme Court in *Pearce* adopted the following rule:

> In order to assure the absence of such a [vindictive] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce,* 395 U.S. at 726. Because the defendant in each of the two cases at issue in *Pearce* had received a longer sentence after retrial without "any reason or justification" being offered "beyond the naked power to impose it," the Supreme Court concluded that the longer sentences violated due process. *Id.* at 726.

¶ 32. Justice White concurred in *Pearce,* stating he would "authorize an increased sentence on retrial based on any objective, identifiable factual data not known to the trial judge at the time of the original

sentencing proceeding." *Id.* at 757 (White, J., concurring). This position departs somewhat from the *Pearce* majority, which appeared to limit the facts or information capable of justifying an increased sentence to "conduct on the part of the defendant occurring after the time of the original sentencing." *Id.* at 726.

¶ 33. The *Pearce* majority, however, also stated a bit more broadly elsewhere in its analysis that a court "is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' " *Id.* at 723 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)). The difference between "conduct occurring after" and "events subsequent to" the original sentencing seems subtle, but in any event, Justice White clearly would have allowed a harsher sentence based upon *any* information not known to the trial judge at the time of the initial sentencing, whether it pertained to conduct or events occurring before or after the initial sentencing.

¶ 34. Later decisions of the Supreme Court have amplified the *Pearce* holding. In *Goodwin,* a case involving an allegation of prosecutorial rather than judicial vindictiveness, the Court characterized the *Pearce* rule as "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin,* 457 U.S. at 374. The Supreme Court explained in *Goodwin* that the presumption is necessary because "[m]otives are complex and difficult to prove." *Id.* at 373. Because of this difficulty in proving that a harsher sentence was actually motivated by vindictiveness, the Court stated that "in certain cases in which action detrimental to the

defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive." *Id.*

¶ 35. In *Texas v. McCullough,* 475 U.S. 134 (1986), the Court clarified that *Pearce* did not necessarily limit the scope of the information capable of overcoming the presumption to " 'conduct or events that occurred subsequent to the original sentencing proceedings.' " *Id.* at 141 (quoting *Wasman v. United States,* 468 U.S. 559, 572 (1984)). The Court held in *McCullough* that "[t]his language . . . was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to *only* 'events that occurred subsequent to the original sentencing proceedings' could in some circumstances lead to absurd results." *Id.* The Court in *McCullough* found no due process violation in an increased sentence after retrial where, in the second trial, unlike in the first, there was evidence that the defendant had actually committed the crime rather than merely aided and abetted it. *Id.* at 143.

¶ 36. The *McCullough* holding was based in large part on *Wasman,* in which the Court upheld an increased sentence after retrial based upon a new criminal conviction on an unrelated crime, where the new conviction was obtained after the first trial but arose out of conduct that occurred before the first trial. The Court held that "[c]onsideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate." *Wasman,* 468 U.S. at 569–70. The Court also stated that "[t]here is no logical support for a distinction between 'events' and 'conduct' of the defendant occurring after the initial sentencing insofar as the kind of information

that may be relied upon to show a nonvindictive motive is concerned." *Id.* at 571–72.

¶ 37. The Court has also clarified that the *Pearce* presumption does not apply to *every* instance in which a defendant receives an increased sentence after successful post-conviction proceedings. *Smith,* 490 U.S. at 799. Because automatic application of the presumption "may block a legitimate response to criminal conduct," the Court has applied it "only in cases in which a reasonable likelihood of vindictiveness exists." *Goodwin,* 457 U.S. at 373.

■

¶ 38. Thus, in *Smith,* the Supreme Court held that the *Pearce* presumption does not apply to a longer sentence imposed after a trial where the defendant had first been convicted and sentenced on a negotiated guilty plea that was later reversed on appeal. *Smith,* 490 U.S. at 799. The Court explained that "[w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, [] subsequent cases have made clear that its presumption of vindictiveness 'does not apply in every case where a convicted defendant receives a higher sentence on retrial.'" *Smith,* 490 U.S. 799 (quoting *Texas v. McCullough,* 475 U.S. 134, 138 (1986)). Due process "is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Id.* at 800 n.3 (quoting *Blackledge v. Perry,* 417 U.S. 21, 27 (1974)). Furthermore, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.* (citing *Goodwin,* 457 U.S. at 384, and *Bordenkircher,* 434 U.S. 357).

¶ 39. More specifically, in *Smith,* the Supreme Court explained the justification for and application of the *Pearce* presumption as follows:

As we explained in *Texas v. McCullough,* "the evil the [*Pearce*] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge." *Ibid. See also Chaffin v. Stynchcombe,* 412 U.S. 17, 25 (1973) (the *Pearce* presumption was not designed to prevent the imposition of an increased sentence on retrial "for some valid reason associated with the need for flexibility and discretion in the sentencing process," but was "premised on the apparent need to guard against *vindictiveness* in the resentencing process"). Because the *Pearce* presumption "may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct," *United States v. Goodwin, supra,* 457 U.S., at 373, we have limited its application, like that of "other 'judicially created means of effectuating the rights secured by the [Constitution],' " to circumstances "where its 'objectives are thought most efficaciously served,' " *Texas v. McCullough, supra,* 475 U.S., at 138, quoting *Stone v. Powell,* 428 U.S. 465, 482, 487 (1976). Such circumstances are those in which there is a "reasonable likelihood," *United States v. Goodwin, supra,* 457 U.S., at 373, that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness, see *Wasman v. United States,* 468 U.S. 559, 569 (1984).

*Smith,* 490 U.S. at 799–800.[3] Noting that "the relevant sentencing information available to the judge after [a

[3] Additional cases in which the *North Carolina v. Pearce,* 395 U.S. 711 (1969), presumption has been held not to apply include: *Colten v. Kentucky,* 407 U.S. 104, 117 (1972) (holding that presumption of vindictiveness is inapplicable in a system which gave a convicted defendant the right to a trial de novo in another court); and *Chaffin v. Stynchcombe,* 412 U.S. 17 (1973)

guilty] plea will usually be considerably less than that available after trial," the Court in *Smith* held that resentencing after a defendant withdraws his guilty plea and is convicted at trial does not present a "reasonable likelihood" of vindictiveness so as to justify application of the *Pearce* presumption. *Id.* at 801. The Court also noted that in this situation, the trial court is "not simply 'do[ing] over what it thought it had already done correctly,'" which might otherwise present a reasonable likelihood of vindictiveness. *Id.* at 801–02 (quoting *Colten v. Kentucky,* 407 U.S. 104, 117 (1972)).

¶ 40. Wisconsin case law on the propriety of imposing a longer sentence following successful post-conviction proceedings flows from *State v. Leonard,* 39 Wis. 2d 461, 159 N.W.2d 577 (1968), which predated, but in a sense anticipated, the Supreme Court's decision in *Pearce.* In *Leonard,* this court concluded that

> [O]n resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.

*Leonard,* 39 Wis. 2d at 473.

¶ 41. The foundation for the *Leonard* rule, however, is not entirely clear. The opinion recites case law from other jurisdictions but then says only that "[s]ix

_____

(holding that no presumption of vindictiveness arose when a second jury, on retrial following a successful appeal, imposed a higher sentence than a prior jury because a second jury was unlikely to have a "personal stake" in the prior conviction or to be "sensitive to the institutional interests that might occasion higher sentences").

justices believe that until the United States Supreme Court has spoken unequivocally on this issue the approach of *Marano* [*v. United States,* 374 F.2d 583 (1st Cir. 1967)] is correct." *Leonard,* 39 Wis. 2d at 473. The author of the opinion, Justice Wilkie, would have held that "any increase in sentencing constitutes a violation of the due-process and equal-protection guaranties of the United States Constitution." *Id. Marano,* from which the *Leonard* rule derives, does not elaborate any legal foundation for its holding. Because *Marano* was a federal prosecution, however, we can assume that the decision was premised on federal constitutional principles. This court has subsequently stated that the *Leonard* rule "[has] its basis in the due process clause of the state and federal constitutions [and] is designed to insure that the sentencing judge does not modify a criminal sentence for the purpose of penalizing a defendant who exercises his postconviction rights." *Grobarchik v. State,* 102 Wis. 2d 461, 473, 307 N.W.2d 170 (1981).

¶ 42. A year after *Leonard,* the Supreme Court decided *Pearce.* Subsequent Wisconsin case law has not reconciled the two cases with any clarity or consistency. We have stated that the *Leonard* rule is both "substantially similar to" and "broader than" the *Pearce* rule, and also that the two rules are based on the same "purposes" and "due process rules." *Martin,* 121 Wis. 2d at 687.

¶ 43. We have stated that Justice White's concurrence in *Pearce* is "more in accord" with *Leonard. Denny v. State,* 47 Wis. 2d 541, 545, 178 N.W.2d 38 (1970). In *State v. Stubbendick,* 110 Wis. 2d 693, 698, 329 N.W.2d 399 (1983), we characterized *Denny* as "adopt[ing] Justice White's concurrence" in *Pearce,* even though *Denny* did not do so, and it would be odd for a state court to adopt a single-vote Supreme Court concurrence as

authoritative on a matter of federal constitutional law. In any event, the issue in *Stubbendick* was whether a circuit court may constitutionally impose an increased sentence after the defendant withdraws his no contest plea and goes to trial. The Supreme Court subsequently concluded in *Smith* that the *Pearce* presumption does not apply in this situation, so that actual vindictiveness must be shown to establish a due process violation. *Smith,* 490 U.S. at 799.

¶ 44.  In *Grobarchik* and *Martin,* we held that neither the *Pearce* nor the *Leonard* rule was applicable where "an initial sentence cannot be carried out because it was not authorized by law," and that in this situation, upon resentencing, "an increased sentence is permissible only when 'based upon a desire to implement the original dispositional scheme as manifested by the record in the first sentencing proceeding.' " *Carter,* 208 Wis. 2d at 149–50 (quoting *Grobarchik,* 102 Wis. 2d at 474, and *Martin,* 121 Wis. 2d at 687).

¶ 45.  In *Grobarchik,* the original sentence on one count was invalid because of a defect in the circuit court's order of consecutive probation, in that the court had ordered the probation to commence on the defendant's release from prison as opposed to the completion of the imprisonment sentence (prison plus parole). *Grobarchik,* 102 Wis. 2d at 474–75. We concluded that the circuit court's correction of this error on resentencing, which operated to extend the period of supervision somewhat, was not subject to the *Leonard* or the *Pearce* rules. *Id.* at 473–74. Instead, we concluded that the resentencing was permissible because the court was motivated not by "malice or vindictiveness in an attempt to penalize the defendant for seeking a correction of his sentence," but by a "desire to implement its original dispositional plan." *Id.* at 475.

700

¶ 46. In *Martin,* the defendant had been convicted and sentenced to consecutive 17–year prison terms on armed robbery and second-degree felony murder predicated on the armed robbery. *Martin,* 121 Wis. 2d at 671–72. The back-to-back sentences were ordered concurrent to a four-year sentence the defendant was serving on a parole revocation. The circuit court granted the defendant's post-trial motion to vacate the armed robbery count on double jeopardy grounds, and resentenced the defendant to 20 years on the remaining second-degree murder count, consecutive to the parole revocation sentence, increasing his sentence on the murder but decreasing his total prison term from 34 to 24 years.

¶ 47. We declined to apply either *Pearce* or *Leonard* in *Martin,* and instead applied *Grobarchik. Id.* at 687–88. We concluded that "because the circuit judge resentenced the defendant to correct a prior invalid sentence, the circuit court correctly attempted to implement the original dispositional scheme reflected by the record in the first sentencing proceeding." *Id.* at 688. We further held that "[t]he new sentence was properly based on the record as initially compiled by the sentencing judge without any new evidence. To encourage the judge at resentencing to exercise independent discretion is inconsistent with the purpose of implementing the original dispositional scheme and would open the door to potential vindictiveness in the resentencing process." *Id.*

¶ 48. *Martin* and *Grobarchik,* therefore, appear to establish a rule that where the resentencing occurs to correct a prior invalid sentence, an increased sentence on any of the remaining counts does not violate due process as long as the circuit court does not deviate from the original sentencing record and dispositional

701

scheme.[4] This rule is different from both *Pearce* and *Leonard* in that it disallows consideration of additional evidence and precludes application of new, independent sentencing discretion at resentencing. Applying this rule here would require reversal. At resentencing, the circuit court considered evidence outside the original sentencing record and evinced a clear intent to, and in fact did, depart from the original overall dispositional scheme. The circuit court added four years to Church's sexual assault sentence, increasing not just the prison term on that count but his overall prison term as well.

¶ 49. Applying either *Leonard* or *Pearce* also requires reversal, but applying *Leonard* would be problematic for a number of reasons. At first blush, *Leonard* appears to create a strict bar against increased sentences on resentencing (except where the two require-

---

[4] The scope and applicability of the rule established in *State v. Martin*, 121 Wis. 2d 670, 360 N.W.2d 43 (1985), and *Grobarchik v. State*, 102 Wis. 2d 461, 307 N.W.2d 170 (1981) were debated in this court's decision in *State v. Carter*, 208 Wis. 2d 142, 560 N.W.2d 256 (1997). In *Carter*, the defendant obtained resentencing after challenging certain information in his original presentence investigation report. This court distinguished *Grobarchik* and *Martin*, and concluded that the circuit court was entitled to "consider all information relevant about a defendant, including information about events and circumstances either that the sentencing court was unaware of at the initial sentencing or that occurred after the initial sentencing." *Carter*, 208 Wis. 2d at 146. This holding was reached in the context of a defendant's request to present additional, favorable information at resentencing. The dissent in *Carter* took the position that the majority had "effectively overruled" *Grobarchik* and *Martin*. *Carter*, 208 Wis. 2d at 162. *Carter* concerned the scope of a circuit court's inquiry upon resentencing, not the due process limitations on the circuit court's ability to increase a sentence upon resentencing.

ments are met), whether after retrial or otherwise. But while *Leonard* on its face applies to *all* resentencings, those following retrial "or mere resentencings," *id.,* we have held that there are *some* resentencings that do not fall within the *Leonard* rule. *Grobarchik, Martin,* and by implication the *Ronzani-Gordon* line of cases are not subject to the *Leonard* rule. *Grobarchik* and *Martin* guard against due process/vindictiveness violations on resentencing not by requiring the circuit court to state objective new factors on the record, but by requiring the circuit court to stick to the original record and general overall sentence structure. As we have noted, that did not occur here.

¶ 50. Reconciling *Leonard* with *Pearce* is difficult for another reason: the circumstances under which a harsher sentence may be imposed are stated more broadly in *Leonard* than in *Pearce,* even in light of later Supreme Court case law explaining the *Pearce* presumption. A longer sentence may be imposed under *Leonard* where "events occur *or come to the sentencing court's attention* subsequent to the first imposition of sentence which warrant an increased penalty," as long as the court states its reasons on the record. *Leonard,* 39 Wis. 2d at 473 (emphasis added). This appears to mean that events or conduct in existence and known to the prosecution but not brought to the circuit court's attention at the original sentencing hearing would be sufficient to justify a longer sentence on resentencing.

¶ 51. In practical terms, then, the resentencing, which occurs only because the defendant has been successful on post-conviction motion or appeal, can under *Leonard* become a second opportunity for the prosecution to persuade the judge to impose a harsher sentence based on information it could have presented the first time around, but did not. This contradicts

*Pearce*'s central purpose, which is to prevent the resentencing process from becoming a vindictive exercise that penalizes a defendant who has succeeded in having his conviction or sentence set aside. Our case law cannot provide less protection than federal due process law provides; at least some applications of the *Leonard* rule would be suspect under *Pearce*.

¶ 52.   We note also that the *Leonard* rule was expressly intended to apply "until the United States Supreme Court has spoken" on this issue. *Id.* There is now a significant body of Supreme Court case law on the due process implications of increased sentences. The constitutionality of an increased sentence upon resentencing is determined by reference to *Pearce* and the Supreme Court cases elaborating on the *Pearce* presumption.

¶ 53.   As we have stated, Church's increased sentence would not comply with the rule of *Martin-Grobarchik.* The circuit court evidently treated this resentencing as an opportunity to revisit the original sentence based upon updated information and argument. Under these circumstances, we conclude that the *Pearce* presumption is triggered. Although Church was not resentenced after retrial, as in *Pearce,* the circumstances of this case created the same sort of likelihood of vindictiveness as to require application of the presumption.

¶ 54.   In this case, as in *Pearce,* the defendant received a longer sentence upon resentencing after successful post-conviction proceedings. The appeal in this case posed a direct challenge to a decision of the circuit court. The circuit court's decision on multiplicity was reversed, the entire case was remanded, and the

circuit court was essentially " 'do[ing] over what it thought it had already done correctly.' " *Smith,* 490 U.S. at 801 (quoting *Colten,* 407 U.S. at 117); *Goodwin,* 457 U.S. at 374, 383 nn. 5, 16 (quoting *Colten*). Inherent in these circumstances is the "reasonable likelihood of vindictiveness" that the *Pearce* presumption is intended to protect against. *Goodwin,* 457 U.S. at 373.

¶ 55.   The *Pearce* presumption of vindictiveness can be overcome if "affirmative reasons" justifying the longer sentence appear in the record and if those reasons are "based upon objective information" regarding events or "identifiable conduct on the part of the defendant" subsequent to the original sentencing proceeding. *Pearce,* 395 U.S. at 726.

¶ 56.   The longer sentence in this case was premised on the passage of time: four years of incarceration had gone by, and Church was still (mostly) in denial and had not sought or received treatment. This does not constitute "objective information" of "identifiable conduct on the part of the defendant" subsequent to the original sentencing. It constitutes a subjective evaluation of the status of Church's rehabilitation at the time of resentencing, based not on any new facts but on the mere continued existence of the original facts.

¶ 57.   Church was in denial and untreated at the time of the original sentencing. That he remained so four years later is not a new factor justifying a longer sentence after a successful appeal; it is merely a continuation of the status quo ante. Defendants who exercise their right to appeal often maintain their innocence. To premise an increased sentence after a successful appeal on a defendant's continued denial of

705

responsibility, without more, comes far too close to punishing the defendant for exercising his right to appeal.

¶ 58. In addition, there is no evidence that Church refused any treatment opportunity while in prison. Indeed, the evidence at the resentencing hearing established that sex offender treatment was not typically offered until the end of an inmate's prison term and was not available to Church during his first four years of incarceration.

¶ 59. Accordingly, the circuit court's justification for the longer sentence here—that Church remained in denial and untreated four years into his prison term—was insufficient to overcome the *Pearce* presumption.[5] Church's state of being in denial and untreated did not constitute a new factor, only a continuation of the same situation that existed at the time of the original sentencing.

¶ 60. In sum, we conclude that resentencing on convictions that remain intact after one or more counts in a multi-count case is vacated is not always required. Where, as here, the vacated count did not affect the overall dispositional structure of the original sentence, resentencing on the remaining counts is unnecessary. We also conclude that the increased sentence imposed upon Church was presumptively vindictive under *Pearce,* and was not supported by objective new factors

---

[5] We state for the record that the question here is not whether Church deserved a sentence longer than 13 years for these crimes. Had the new sentence of 17 years, or perhaps even a longer term, been imposed as an initial matter, it easily would have withstood review as an appropriate exercise of discretion, given the severity of these offenses and the risk of recidivism, as fully explained by the circuit court. *See McCleary v. State*, 49 Wis. 2d 263, 280–82, 182 N.W.2d 512 (1971).

in the record justifying the increase. Accordingly, the increased sentence violated Church's right to due process.

*By the Court.*—The decision of the court of appeals is reversed.